**UNITED STATES of America, Plaintiff–Appellee/Cross– Appellant,**

**v.**

**Johnny P. WATTS, Defendant– Appellant/Cross–Appellee.**

**Nos. 00–4008, 00–4166.**

United States Court of Appeals, Seventh Circuit.

Argued April 17, 2001.

Decided July 5, 2001.

Bradley W. Murphy (argued), Office of the U.S. Atty., Peoria, IL, for United States.

George F. Taseff (argued), Office of the Fed. Public Def., Peoria, IL, for Johnny P. Watts.

Before FAIRCHILD, CUDAHY, and COFFEY, Circuit Judges.

CUDAHY, Circuit Judge.

On January 19, 2000, Johnny P. Watts and three companions robbed a branch of the Commerce Bank in Peoria, Illinois.

While two men jumped over the bank's teller counter and removed approximately $55,000, Watts stood near the front door and allegedly pointed a small-caliber hand-gun in the direction of the bank tellers.[1] All four men were apprehended shortly after the robbery.

The indictment charged Watts with armed bank robbery (count one), in violation of 18 U.S.C. § 2113(a) and (d), and using or carrying a firearm during a crime of violence (count two), in violation of 18 U.S.C. § 924(c)(1). On July 13, 2000, Watts pleaded guilty to both counts, but reserved the right to pursue on appeal a line of argument popular with criminal defendants these days: whether Congress exceeded its Commerce Clause power by enacting the federal armed bank robbery statute.

The district court sentenced Watts to 57 months of imprisonment on the armed bank robbery count with minimal objection from either the government or Watts. Sentencing on the second count, use of a firearm, proved more contentious. Section 924(c)(1)(A)(ii) increases the minimum term of imprisonment from five to seven years upon a finding that the firearm was brandished during the crime. Because the indictment did not charge Watts with brandishing his firearm, the district court believed that *Apprendi v. New Jersey*, which holds that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt," 530 U.S. 466, 490, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000),[2] pre-

---

1. The record does not reflect what role the fourth co-defendant played in the robbery.

2. Technically, *Apprendi* does not separately address whether facts that increase the maximum penalty for a crime beyond the prescribed statutory maximum must be charged in the indictment. *See* 530 U.S. at 477 n. 3, 120 S.Ct. 2348. However, the *Apprendi* majority quotes with approval the holding in *Jones v. United States*: "under the Due Process Clause of the Fifth Amendment and the notice and jury trial guarantees of the Sixth Amend-

cluded the higher seven-year mandatory minimum sentence prescribed by § 924(c)(1)(A)(ii). Accordingly, the district court declined the government's invitation to decide whether Watts brandished his firearm during the robbery and instead sentenced Watts to a five-year term of imprisonment on count two, to run consecutively with the 57–month term of imprisonment he received on count one.

Watts appeals his conviction, arguing that the district court should have dismissed count one because Congress exceeded its Commerce Clause power when it enacted the armed bank robbery statute. The government cross-appeals Watts' sentence, arguing that the district court should have considered imposing a seven-year term of imprisonment on count two because *Apprendi* does not govern mandatory minimum sentences.

## I.

■ We first address Watts' argument that Congress exceeded its authority to regulate interstate commerce under the Commerce Clause when it enacted the federal armed bank robbery statute, 18 U.S.C. § 2113. As might be expected, Watts bases this argument on *United States v. Lopez*, 514 U.S. 549, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995) (Gun–Free School Zones Act exceeded Congress' Commerce Clause power), and its progeny, *United States v. Morrison*, 529 U.S. 598, 120 S.Ct. 1740, 146 L.Ed.2d 658 (2000) (Violence Against Women Act exceeded Congress' Commerce Clause power), and *Jones v. United States*, 529 U.S. 848, 120

S.Ct. 1904, 146 L.Ed.2d 902 (2000) (construing reach of federal arson statute to exclude owner-occupied private property so as to avoid Commerce Clause question). Collectively, these cases teach that Congress' power to regulate under the Commerce Clause is limited to three broad categories: "(1) 'Congress may regulate the use of the channels of interstate commerce'; (2) 'Congress is empowered to regulate and protect the instrumentalities of interstate commerce, or persons or things in interstate commerce, even though the threat may come only from intrastate activities'; (3) 'Congress' commerce authority includes the power to regulate those activities having substantial relation to interstate commerce.' " *United States v. Taylor*, 226 F.3d 593, 598 (7th Cir.2000) (quoting *Lopez*, 514 U.S. at 558–59, 115 S.Ct. 1624). These cases thus have put an end to a 58 year sequence in which the Supreme Court "consistently upheld federal legislation against claims that Congress had overstepped its authority under the Commerce Clause." *Id.* (and cases collected therein).

Watts advances a number of arguments in an effort to show that the federal armed bank robbery statute, 18 U.S.C. § 2113, falls into none of the above-noted categories of permissible Commerce Clause regulation. We need not discuss many of these arguments because they so clearly lack merit. *See United States v. Wicks*, 132 F.3d 383, 390 (7th Cir.1997) (noting that any argument which claims that § 2113 exceeds Congress' powers under the Commerce Clause would be untenable); *United*

---

ment, any fact (other than prior conviction) that increases the maximum penalty for a crime must be charged in an *indictment*, submitted to a jury, and proven beyond a reasonable doubt." 526 U.S. 227, 243 n. 6, 119 S.Ct. 1215, 143 L.Ed.2d 311 (1999) (emphasis added). *See Apprendi*, 530 U.S. at 476, 120 S.Ct. 2348. It is perhaps for this reason that

we have nonetheless read Apprendi to require that certain facts must be charged in the indictment, as well as submitted to a jury and proven beyond a reasonable doubt. *See United States v. Noble*, 246 F.3d 946, 955 (7th Cir.2001); *United States v. Brough*, 243 F.3d 1078, 1080 (7th Cir.2001) (and cases cited therein).

*States v. Harris*, 108 F.3d 1107, 1109 (9th Cir.1997) (noting that § 2113's regulation of banks that are insured by the Federal Deposit Insurance Corporation (FDIC) ensures that Congress has acted well within its Commerce Clause power); *United States v. Wilson*, 73 F.3d 675, 694 (7th Cir.1995) (Coffey, J., dissenting) (describing § 2113 as a "properly framed" statute for Commerce Clause purposes).

██ Nonetheless, Watts does present one argument—regarding § 2113's jurisdictional reach over federally insured banks—that is worth exploring in slightly more detail.[3] To further this argument, Watts relies primarily on *Jones v. United States*, 526 U.S. 227, 119 S.Ct. 1215, 143 L.Ed.2d 311 (1999), which involved a challenge to the federal arson statute by a defendant who had set fire to an owner-occupied private residence. The arson statute at issue in *Jones* limited its jurisdiction to "property used in interstate or foreign commerce or in any activity affecting interstate or foreign commerce." As part of its attempt to show that the private residence satisfied this jurisdictional requirement, the government pointed out that the house in question was insured under an insurance policy that had been issued by an out-of-state insurer. The Supreme Court rejected this argument, finding that the interstate insurance policy was insufficient to justify a finding that the residence had been used in interstate commerce. *See Jones*, 529 U.S. at 855–56, 120 S.Ct. 1904.

Watts believes that, like arson, robbery is the kind of "paradigmatic common law crime" that requires more than proof of interstate insurance coverage—such as by the FDIC's deposit insurance—before Congress may prohibit the crime through an exercise of its Commerce Clause powers. Watts is even more convinced that FDIC insurance does not provide a proper basis for Congress' exercise of its Commerce Clause power because, as he was informed in a letter from a senior attorney at the FDIC, FDIC insurance does not even cover losses due to robbery. Accordingly, Watts is convinced that Congress exceeded its Commerce Clause power by turning the robbery of federally-insured banks into a federal crime.

We believe otherwise, for FDIC-insured banks are fundamental to the conduct of interstate commerce. Congress created the FDIC to "keep open the channels of trade and commercial exchange." *Weir v. United States*, 92 F.2d 634, 636 (7th Cir.1937). As a result, "[t]he activities of an FDIC-insured institution ... affect interstate commerce more than property insured by a private carrier.... [T]he government insurance is federally administered, federal officials periodically examine the accounts, and the reports sent to the FDIC deal with money that has been deposited from many sources, including those outside the state." *United States v. Peay*, 972 F.2d 71, 75 (4th Cir.1992). Robberies of FDIC-insured banks thus have an interstate economic effect that is quite independent of the coverage that FDIC insurance extends to insured banks.[4] It is

---

**3.** Section 2113(f) also extends to banks that are members of the Federal Reserve System. However, the parties confine their discussion to § 2113(f)'s jurisdiction over FDIC-insured banks, and we do so as well.

**4.** For the sake of completeness, however, we note that even if FDIC insurance does not cover losses due to robbery, the FDIC's con-

cern with robbery's impact on its insureds is illustrated by its requirement that insured banks "adopt appropriate security procedures to discourage robberies, burglaries, and larcenies and ... assist in identifying and apprehending persons who commit such acts." 12 C.F.R. § 326.0.

therefore of no consequence that FDIC insurance does not cover losses due to robbery. Accordingly, at the very least, the FDIC-insured financial institutions are instrumentalities and channels of interstate commerce and their protection from robbery is well within Congress's Commerce Clause power. *See Harris*, 108 F.3d at 1109.

## II.

■ On cross-appeal, the government argues that *Apprendi*—which holds that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt," 530 U.S. 466, 490, 120 S.Ct. 2348, 147 L.Ed.2d 435—does not govern mandatory minimum sentences. As already noted, count two of the indictment charged Watts with a violation of 18 U.S.C. § 924, which prescribes increasingly lengthy mandatory minimum sentences depending on the seriousness of the firearm's use during the crime; merely using or carrying a firearm subjects the defendant to a mandatory minimum five-year term of imprisonment, § 924(c)(1)(A)(i), but "brandishing" the firearm increases the mandatory minimum to seven years, § 924(c)(1)(A)(ii). The district court believed that *Apprendi* prevented it from imposing the higher seven-year mandatory minimum sentence because the indictment did not charge Watts with brandishing his firearm during the robbery. Accordingly, the district court sentenced Watts to a five-year term of imprisonment under § 924(c)(1)(A)(i) without determining whether he brandished the firearm.

The government argues that the district court incorrectly interpreted *Apprendi* because *Apprendi*'s inapplicability to statutory mandatory minimum sentences is well-settled in this circuit, as well as many of our sister circuits. See *United States v. Rodgers*, 245 F.3d 961, 967–68 (7th Cir. 2001) (and cases collected therein); *United States v. Williams*, 238 F.3d 871, 877 (7th Cir.2001). Watts' only argument in the face of such overwhelmingly unfavorable precedent is to ask us to ignore our precedent, discount the majority's discussion of mandatory minimum sentences in *Apprendi* and adopt the rule of the Sixth Circuit, which is, as far as we can tell, the only circuit that extends *Apprendi*'s reach to mandatory minimum sentences.

In applying *Apprendi* to mandatory minimum sentences, the Sixth Circuit reasoned that "[t]he basic holding of *Apprendi* is twofold: *first*, that courts must count any 'fact' that increases the 'penalty beyond the prescribed statutory maximum' as an element of the offense 'except for one important exception,' i.e., 'the fact of a prior conviction;' and *second*, that it 'is unconstitutional for a legislature' to treat 'facts that increase the prescribed range of penalties to which a criminal defendant is exposed' as mere sentencing factors, rather than facts to be established as elements of the offense." *United States v. Ramirez*, 242 F.3d 348, 350 (6th Cir.2001) (emphasis in original). Focusing on this supposed second holding of *Apprendi*, the Sixth Circuit concluded "that 'the assessment of facts that increase the prescribed range of penalties to which a criminal defendant is exposed,' such as moving up the scale of mandatory minimum sentences, invokes the full range of constitutional protections required for 'elements of the crime.'" Id. at 351 (quoting *Jones v. United States*, 526 U.S. at 252, 119 S.Ct. 1215 (Stevens, J., concurring)).

■ While the Sixth Circuit's reading of *Apprendi* is now perhaps a tenable one (and might indeed be the wave of the future), it is not, at this point, our reading.

It is true, as noted by the Sixth Circuit, that the *Apprendi* majority did quote Justice Stevens' concurrence in *Jones* for the proposition that "it is unconstitutional for a legislature to remove from the jury the assessment of facts that increase the prescribed *range* of penalties to which a criminal defendant is exposed." *See Apprendi*, 530 U.S. at 490, 120 S.Ct. 2348 (quoting *Jones*, 526 U.S. at 252, 119 S.Ct. 1215 (Stevens, J., concurring)) (emphasis added). However, the majority also explicitly disclaimed any intent to overrule *McMillan v. Pennsylvania*, 477 U.S. 79, 106 S.Ct. 2411, 91 L.Ed.2d 67 (1986), which held that a defendant's due process rights were not violated when a sentencing judge decided facts that raised the defendant's mandatory minimum sentence using the preponderance of the evidence standard. *See Apprendi*, 120 S.Ct. at 2361 n. 13. Unlike the Sixth Circuit, we have resolved the tension between these seemingly contradictory statements by looking to the more specific of the two: "the majority opinion in Apprendi specifically stated that, in cases involving a mandatory minimum sentence, the rule of *Apprendi* is not implicated when the actual sentence imposed is less severe than the statutory maximum." *Williams*, 238 F.3d at 877. This is the rule in this circuit, and, accordingly, the district court erred by declining to consider whether Watts was subject to a mandatory minimum seven-year term of imprisonment for brandishing his firearm during the robbery.

### III.

For the foregoing reasons, the judgment of conviction is AFFIRMED and the sentence is VACATED. The case is REMANDED to the district court for further proceedings consistent with this opinion.