In the

# United States Court of Appeals
## For the Seventh Circuit

No. 08-1234

FORREST WOODS,

*Petitioner-Appellant*,

*v.*

GREGORY SCHWARTZ, Warden,

*Respondent-Appellee.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 07 C 438—**Wayne R. Andersen**, *Judge.*

ARGUED SEPTEMBER 24, 2009—DECIDED DECEMBER 9, 2009

Before POSNER, MANION, and TINDER, *Circuit Judges.*

MANION, *Circuit Judge.* Forrest Woods was convicted in Illinois state court of murdering Omar Wilson and sentenced to forty years' imprisonment. After unsuccessfully appealing his sentence, he filed three state-court petitions for post-conviction relief. All were denied. He then filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254. The district court denied his petition, holding that all but one issue was procedurally barred

and denying relief on the single preserved issue. On appeal, Woods challenges the denial of his petition. We affirm.

I.

On the night of July 10, 1995, Kenya Wilson walked out of a bedroom in her Hazel Crest, Illinois home and saw her brother Omar at the bottom of the stairs being restrained from behind by an unknown man, later identified as Forrest Woods. Over a span of three minutes, Omar alternated between calling for his brother Terrell Wilson and telling Kenya to go back to her bedroom. Then, without a word, Woods shot Omar in the back of the head.

At this, Kenya ran into a bathroom and shut the door. Woods chased after her and tried to gain entry but fled when Terrell came out of his room to investigate the gunshot. It was at this point that Terrell got a brief look at Woods. The police were then called, and Omar was pronounced dead at the scene.

Neither Kenya nor Terrell knew the shooter. Both described him as a black man with a light complexion, round face, and a husky or stocky build. Kenya initially estimated that he was between eighteen and twenty years old, stood between 5′7″ and 5′8″, and weighed 165 pounds. At the time of his arrest, Woods was seventeen, stood 5′10″ and weighed approximately 225 pounds.

To identify the shooter, the police initially presented Kenya with over a thousand photos, but she did not

recognize him in the initial batch. Over a week later, Officer Raymond Huggins of the Chicago Housing Authority was at the scene of a domestic disturbance. A suspect there volunteered the following nugget of information: "Did you hear about the shooting in Hazel Crest? Boy named Foo-Foo did it." Huggins was familiar with Foo-Foo: he had previously arrested Forrest Woods using that alias.

Huggins then relayed the tip to Officer Gary Gentzle, who was investigating Omar's murder, and gave Gentzle a photo of Woods. That photo was shown to Kenya, along with seven other photos; she immediately identified Woods as the shooter. The next day both she and Terrell identified Woods in a lineup. The state charged Woods with first-degree murder; he pleaded not guilty and proceeded to trial.

At the one-day bench trial, Kenya and Terrell testified to the events on the night of Omar's murder, and both again identified Woods as the shooter. The prosecution also called Officer Gentzle and Omar's mother to testify. The defense did not call any witnesses. Woods was found guilty of murdering Omar Wilson and later sentenced to forty years' imprisonment. He then filed a direct appeal challenging his sentence but not his conviction. The Illinois Appellate Court affirmed Woods' sentence, and the Illinois Supreme Court denied him leave to appeal.

Woods then filed the first of three post-conviction petitions in Illinois state court. The first petition raised three issues. Pertinent here was Woods' claim that his

trial counsel rendered constitutionally ineffective assistance by failing to call his brother, Harold Woods, as an alibi witness. Attached to the petition was an affidavit from Harold prepared four years after the shooting, stating, "I don't recall [Woods] leaving the house anytime that night." The trial court dismissed the petition, concluding the claims should have been presented on direct appeal and were thus waived. The appellate court, however, held that Woods' claim of ineffective assistance of counsel was not waived and addressed it on the merits under *Strickland v. Washington*, 466 U.S. 668 (1984). It found that Harold's affidavit was inconclusive, and based on the eyewitness testimony at trial, it concluded that had Harold testified it "would not likely have changed the outcome of the trial" and denied the petition. The Illinois Supreme Court denied Woods' petition for leave to appeal.

Woods then filed a second petition for post-conviction relief, claiming that his trial counsel was ineffective for failing to call his mother and brother-in-law as alibi witnesses. Attached to the petition were their affidavits attesting to Woods' presence at home on the night of the murder. The trial court dismissed the petition, and the appellate court affirmed, holding that the claim and the affidavits should have been submitted in Woods' initial post-conviction petition and were thus waived. It also held that Woods could not establish cause and prejudice to escape the procedural bar of waiver. The Illinois Supreme Court again denied Woods' petition for leave to appeal.

Undeterred, Woods filed a third petition for post-conviction relief. In it, he raised three claims with twelve distinct sub-claims. The trial court dismissed the petition as "frivolous and patently without merit." On appeal, Woods' appointed counsel filed a motion to withdraw under *Pennsylvania v. Finley*, 481 U.S. 551 (1987). In the motion, counsel recited the procedural history of Woods' case and stated

> Woods has shown no objective factor why he could not have raised these claims in his original post-conviction petition, and therefore he may not seek relief in a successive petition.

With the exception of *Finley*, the motion did not cite any federal law. Woods then filed two objections restating the bases for the claims in his third petition; however, he did not address the procedural bar of waiver that his counsel had cited. But he did note, without anything more, that the failure to entertain his petition would result in a miscarriage of justice. The appellate court granted the motion to withdraw and affirmed the trial court's dismissal of the petition. In their respective orders, neither the trial court nor the appellate court cited or discussed federal law. And for the fourth time, the Illinois Supreme Court denied Woods' petition for leave to appeal.

Woods then filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254 in the United States District Court for the Northern District of Illinois. In his petition, he raised seventeen claims. The district court found that Woods had procedurally defaulted all but one of those

claims and that he could not escape the procedural bar under any of the applicable exceptions. Concerning the merits of his preserved claim of ineffective assistance of counsel for failing to call Harold Woods to testify, the district court found that in denying that claim the Illinois Appellate Court did not unreasonably apply *Strickland*'s standard for ineffective assistance of counsel and denied Woods' petition.

Woods then moved for a certificate of appealability, which the district court denied. This court, however, granted him one on the following issues: whether Woods' trial counsel was ineffective for failing to challenge Kenya Wilson's ability to view the crime; whether Woods' appellate counsel was ineffective for raising only a forfeited issue; and whether Woods' trial counsel was ineffective for failing to identify and call alibi witnesses. This appeal followed.

II.

A.

The first two claims Woods raises on appeal are that his appellate counsel was ineffective for raising only a forfeited issue and that his trial counsel was ineffective for failing to challenge Kenya Wilson's ability to view the crime. The district court found that both claims were procedurally defaulted and we review that determination de novo. *Smith v. Gaetz*, 565 F.3d 346, 352 (7th Cir. 2009).

Before seeking habeas relief, a petitioner must fairly present his federal claims at each level of the state's courts

for their review. 28 U.S.C. § 2254(b)(1)(A); *Baldwin v. Reese,* 541 U.S. 27, 32 (2004). The natural corollary of this requirement is that when a petitioner has exhausted his state court remedies and failed to properly assert his federal claims at each level of review those claims are procedurally defaulted. *Lewis v. Sterns,* 390 F.3d 1019, 1026 (7th Cir. 2004). And when a state court resolves a federal claim by resting its decision on a state law ground independent of the federal question and adequate to support the judgment, we will not review the question of federal law. *Coleman v. Thompson,* 501 U.S. 722, 729 (2001). Any such ruling on the federal claims would be advisory, given the fact that on remand the state court would still deny petitioner relief on the independent and adequate state law ground. *Id.* at 729 ("Because this Court has no power to review a state law determination that is sufficient to support the judgment, resolution of any independent federal ground for the decision could not affect the judgment and would therefore be advisory.").

Thus, when a state refuses to adjudicate a petitioner's federal claims because they were not raised in accord with the state's procedural rules, that will normally qualify as an independent and adequate state ground for denying federal review. *Cone v. Bell*, 556 U.S. ___, 129 S. Ct. 1769, 1780 (2009). "A finding of waiver by the state postconviction court is enough to establish an adequate and independent state ground." *Sturgeon v. Chandler*, 552 F.3d 604, 611 (7th Cir. 2009). Such claims are commonly referred to as being procedurally defaulted. *E.g.*, *Johnson v. Loftus*, 518 F.3d 453, 455 (7th Cir. 2008). And when a

claim is procedurally defaulted, that bars our review of the claim, unless the petitioner can demonstrate both cause for and prejudice from the default or that a miscarriage of justice will occur if we do not consider his claims. *Anderson v. Benik*, 471 F.3d 811, 815 (7th Cir. 2006).

In this case, Woods raised his claims that trial counsel was ineffective for failing to challenge Kenya Wilson's ability to view the crime and that appellate counsel was ineffective for raising only a forfeited issue for the first time in his third post-conviction petition. Nonetheless, he argues that these claims are not procedurally defaulted because the appellate court denied his federal claims on their merits. In the alternative, Woods argues that he can escape that procedural bar because it would result in a fundamental miscarriage of justice, namely, "in a conviction of one who is actually innocent." *Gonzales v. Mize*, 565 F.3d 373, 381 (7th Cir. 2009) (parenthesis omitted). Woods does not argue "cause" and "prejudice" to escape the procedural bar. *See Schlup v. Delo*, 513 U.S. 298, 314-15 (1995) (discussing the difference between "cause and prejudice" and "miscarriage of justice").

Woods argues that the Illinois Appellate Court decided the merits of his federal claims when it summarily affirmed the trial court's denial of his third petition for post-conviction relief. In support, Woods relies on our holding in *Wilkinson v. Cowan*, 231 F.3d 347 (2000), and language we used in *Lewis v. Sternes*, 390 F.3d 1019, 1030

(7th Cir. 2004), summarizing our holding in *Wilkinson*.[1] Both cases addressed the dismissal of post-conviction petitions, when the appellate court granted an attorney's *Finley* motion to withdraw. Woods reads them as standing for the broad proposition that when post-conviction appellate counsel files a *Finley* motion and in response the appellate court both grants the attorney's motion to withdraw and summarily affirms the dismissal of the petitioner's post-conviction petition, the court has rendered a merits judgment on each of the claims asserted in that petition. But a careful examination of those cases shows that our holding in *Wilkinson* was not as broad as Woods would read it.

In *Wilkinson* we addressed a much different situation than we have here. There, the petitioner had presented his federal claims in his original post-conviction petition to the trial court, and they were summarily dismissed. *Wilkinson*, 231 F.3d at 349. He appealed, and his appointed appellate counsel moved "to withdraw without

---

[1] The language from *Lewis* that Woods relies upon appears when we summarized the holding in *Wilkinson* and stated:

> In *Wilkinson v. Cowan*, 231 F.3d 347, 352 (7th Cir. 2000), we held that when the Illinois Appellate Court, in response to a *Finley* motion, had not only granted an attorney's motion to withdraw but also summarily affirmed the dismissal of the petitioner's post-conviction petition, the court had rendered a merits judgment as to each of the claims asserted in that petition.

*Lewis*, 390 F.3d at 1030.

briefing the merits of any of the issues raised in the case." *Id.* at 350. Petitioner did not file an objection, and the appellate court granted the motion to withdraw and summarily affirmed the trial court's denial of the petition.

In response to the habeas petition, the state argued that his claims were defaulted because he did not again present his claims in a pro se memorandum responding to the motion to withdraw or by filing his own brief addressing the issues he sought to appeal. *Id.* We rejected the state's position. *Id.* at 351-52 ("We simply reject the State's contention that *Wilkinson* can be charged with a procedural default under these circumstances."). Based on the circumstances of that case, we held that the appellate court had been presented with the petitioner's claims and had addressed them on their merits. *Id.* at 352; *see also id.* at 350 ("In view of the particular way in which the Illinois appellate court disposed of Wilkinson's post-conviction appeal, however, we do not believe that he procedurally defaulted the ineffectiveness claim.").

In *Lewis* we rejected a petitioner's claim that he had fairly presented the appellate court with two ineffective assistance of counsel claims that first appeared in his objection to his attorney's motion to withdraw. *Lewis*, 390 F.3d at 1031 ("[W]e reject the notion that a petitioner fairly presents his federal claim to the state courts when he raises that claim for the first time in an appellate brief after his lawyer has filed a motion to withdraw under *Finley*."). We refused to read our holding in *Wilkinson* broadly and limited it to the precise factual

and procedural posture of that case. *Id.* at 1031 ("Lewis construes our holding in *Wilkinson* far too broadly."). We stated:

> At most, *Wilkinson* stands for the proposition that when a state appellate court elects to summarily affirm the judgment below *without having invited the appellant to identify the issues he wishes to pursue on appeal*, we will construe the affirmance to have reached the merits of each issue that the petitioner properly raised in the court below.

*Id.* at 1031 (emphasis added).

Simply put, the holding in *Wilkinson* cannot be divorced from its unique facts. And it certainly did not create a categorical rule that a decision is merits-based whenever an appellate court grants a *Finley* motion and summarily affirms the trial court's denial of a post-conviction petition. Such a blanket holding would, in fact, impermissibly restrain how state appellate courts may dispose of cases and motions to withdraw: "We have no power to tell state courts how they must write their opinions." *Coleman*, 501 U.S. at 739. And to prescribe such a categorical rule in these instances would rob the state courts of their autonomy. *Id.* ("[W]e will not impose on state courts the responsibility for using particular language in every case."); *accord id.* ("A broad presumption would also put too great a burden on the state courts."). Therefore, we reject Woods' argument that our cases stand for the proposition that any time the appellate court grants an attorney's motion to withdraw and summarily affirms the denial of

his post-conviction petition it is a decision on the merits of his federal claims.[2]

In cases such as this one, where on the face of the order it is unclear on what basis the state court disposed of a claim, we must make a determination on the record that the state court was presented with. *Id.* Specifically, we look to the nature of the disposition and the surrounding circumstances to determine whether the state court relied on an independent and adequate state law ground in disposing of the claim, or whether "the state court decision fairly appears to rest on federal grounds or is interwoven with federal law." *Willis v. Aiken*, 8 F.3d 556, 561 (7th Cir. 1993). Here, our review of the record includes the motion to withdraw filed by Woods' appointed counsel during the appeal of his third post-conviction petition. *Williams v. Washington*, 59 F.3d 673, 678 n.3 (7th Cir. 1995) (looking to state court briefs to determine the basis of the appellate court's holding).

---

[2] Beyond the fact that a categorical rule in such cases is impermissible, the circumstances in *Wilkinson* are distinguishable from what we have here. In *Wilkinson*, the petitioner only filed one post-conviction petition, there were no prior orders disposing of his claims on clear procedural grounds, and he did not object to his attorney's motion to withdraw. *Wilkinson*, 231 F.3d at 349. Here, the appellate court was disposing of Woods' third petition for post-conviction relief, Woods' previous petition was dismissed as procedurally barred, and he filed two objections to the motion to withdraw restating his claims.

The orders denying Woods' third post-conviction petition are unclear. There are two trial court orders disposing of Woods' petition. One is a one-page transcript that briefly addresses the fact that most of Woods' claims criticize trial tactics and should have been raised earlier; it also notes that Woods' allegations are unsupported by anything more than his blanket bites of disapproval. The other is a mere minute order. Neither states a basis for the holding or provides any reasoning; they simply conclude that the petition is dismissed as frivolous and without merit. The appellate court's order offers little more: it briefly recounts the procedural history of Woods' case and states that the motion to withdraw is granted and the trial court is affirmed. These orders do not give us much to go on. But read in conjunction with all of the surrounding circumstances of Woods' claims, they indicate that the resolution of Woods' third post-conviction petition neither rested primarily on federal law nor was it interwoven with federal law. *Coleman*, 501 U.S. at 735; *Harris v. Reed*, 489 U.S. 255, 261 (1989). Rather, the appellate court summarily applied the state-law doctrine of waiver to dispose of Woods' claims.

Under Illinois law, "[a]ny claim of substantial denial of constitutional rights not raised in the original or an amended petition is waived." 725 ILCS 5/122-3 (2008); *see also People v. Anderson*, 874 N.E.2d 277, 288 (Ill. App. Ct. 2007) ("[I]n the context of a successive postconviction petition, the rule of waiver is not merely a principle of judicial administration, but, rather, an express require-

ment of the statute."). Here, the appellate court dismissed
Woods' second post-conviction petition on waiver grounds
and noted that he could not escape the procedural bar
by establishing cause or prejudice. Similarly, under
Illinois law, all of the claims in Woods' third post-convic-
tion petition would have been deemed waived: they all
concerned matters he would have been aware of on
direct appeal (the failure to challenge the eyewitness
testimony of Kenya Wilson) or in his first post-conviction
petition (the fact that appellate counsel only raised a
forfeited issue). *People v. Piper*, 651 N.E. 2d 739, 741 (Ill.
App. Ct. 1995).

While the orders disposing of Woods' third post-con-
viction petition do not explicitly invoke waiver or
federal law as a basis for denial, the sole ground cited
by his appellate counsel in the motion to withdraw was
that she "could not argue why petitioner should be al-
lowed to present these claims, when they should have
been raised in his original post-conviction petition, and
therefore he may not seek relief in a successive peti-
tion." Nothing in the appellate court's order discusses
how Woods could escape the procedural bar for it to
reach the merits and deny his newly presented but previ-
ously available claims. *People v. Pitsonbarger*, 793 N.E.2d
609, 621-23 (Ill. 2002); *see also Anderson*, 874 N.E.2d at 289.
To the contrary, those orders say nothing more than that
the petition is denied. *Ylst v. Nunnemaker*, 501 U.S. 797, 804
(1991) ("The essence of unexplained orders is that they
say nothing."). And nothing plus Woods' speculation
of the orders' import does not mean that the disposition

fairly appears to rest on or to be interwoven with federal law.

On this record, there is no "good reason to question whether there is an independent and adequate state ground for the [appellate court's] decision." *Coleman*, 501 U.S. at 739. Rather, the underlying *Finley* motion and the history of this case, including the fact that Woods' second petition was denied on waiver grounds, and the circumstances surrounding the denial of Woods' third post-conviction petition convinces us that the state courts did not address and reject the merits of Woods' federal claims in his third post-conviction petition. Therefore, we find that Wood's claims of ineffective assistance of appellate counsel and ineffective assistance of trial counsel for failing to challenge Kenya's testimony were not denied on their merits but were rejected on the independent and adequate state law ground of waiver.

The state court's reliance on an independent and adequate state law ground in denying a claim bars our review. *Smith*, 565 F.3d at 351; *Sturgeon*, 552 F.3d at 611 (noting waiver constitutes an adequate and independent state ground). To escape this procedural bar, Woods argues that our failure to entertain the merits of his claims will result in a miscarriage of justice, namely the conviction of an innocent man: Woods claims that he is actually innocent of killing Omar Wilson. But a defendant who asserts actual innocence as a reason to excuse a procedural default must do more than invoke those words, he "must *demonstrate* [his] innocence." *Buie v. McAdory*, 341 F.3d 623, 626-27 (7th Cir. 2003). Indeed,

he "comes before the habeas court with a strong—and in the vast majority of the cases conclusive—presumption of guilt." *Schlup v. Delo*, 513 U.S. 298, 326, n.42 (1995). To rebut this presumption, Woods must make a credible claim, supported by new, reliable evidence of his innocence. *Id.* at 324. He must establish that "in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *Id.* at 329.

This is not such a case. Woods' "new" evidence is the affidavits of his family members. All of the affidavits were prepared years after the murder; Woods' mother and brother-in-law's were, in fact, prepared seven years after the murder. And they all note with incredible particularity the most pedestrian details of that night: the fact that they watched *Martin*, ate White Castle, and Woods was told to go to bed at a certain time and the time he finally complied. Such recall would be understandable if the night stood out as being particularly remarkable and traumatic. But here, for the Woods family at least, the night was like any other: it was not until ten days later that Woods was arrested for the murder.

Weighed against the eyewitness testimony of Kenya Wilson, these affidavits do not establish that no "reasonable factfinder would have found the applicant guilty of the underlying offense; it is black letter law that testimony of a single eyewitness suffices for conviction even if 20 bishops testify that the eyewitness is a liar." *Hayes v. Battaglia*, 403 F.3d 935, 938 (7th Cir. 2005) (internal quota-

tion marks omitted). Therefore, we find that Woods cannot escape the procedural default of his first two claims.

B.

Woods has preserved one claim for review: whether his trial counsel was constitutionally ineffective for failing to call his brother Harold Woods as an alibi witness. This claim was presented in his first post-conviction petition to the Illinois Appellate Court, which rejected the claim. Our review is limited to whether that court's denial of his claim was an unreasonable application of clearly established federal law. 28 U.S.C. § 2254(d). This claim is a mixed question of law and fact, and we review the district court's denial de novo. *Allen v. Chandler*, 555 F.3d 596, 600 (7th Cir. 2009).

A state court's decision is "contrary to" clearly established federal law "if the state court applies a rule different from the governing law set forth in [Supreme Court] cases, or if it decides a case differently than [the Supreme Court has] done on a set of materially indistinguishable facts." *Bell v. Cone*, 535 U.S. 685, 694 (2002). And a state court's decision is an "unreasonable application" of clearly established federal law if it correctly identifies the governing legal principle "but unreasonably applies it to the facts of the particular case." *Id.* In other words, Woods must show that the appellate court's decision was "so erroneous as to be objectively unreasonable*." Badelle v. Correll*, 452 F.3d 648, 654 (7th Cir. 2006); *Raygoza v. Hulick*, 474 F.3d 958, 963 (7th Cir. 2007) (noting the decision

must fall "well outside the boundaries of permissible differences of opinion." (quotation omitted)).

Here, the appellate court correctly articulated the *Strickland* standard: Woods must demonstrate (1) his counsel's performance fell below an objective standard of reasonableness and (2) there is a reasonable probability that but for his counsel's unprofessional errors, the result of the proceeding would have been different. In addressing whether Woods' claim could meet *Strickland*'s prejudice prong, the court determined that Harold Woods' affidavit only established that he did not recall Woods leaving the house after 9:15 the night of the murder. The court held that this statement was inconclusive and weighed very little against the eyewitnesses testimony and identifications by Kenya and Terrell. In affirming the trial court's denial of Woods' petition, the appellate court ultimately held that Harold's testimony "would not likely have changed the outcome of [the] trial."[3]

---

[3] While that is not the *Strickland* standard, the appellate court's reference to it in the conclusion was made after it had weighed Harold's affidavit against the eyewitness identifications of Kenya and Terrell at trial. The proper statement of *Strickland*'s prejudice test appeared in the preceding paragraph. We have noted numerous times that there is no error when a court has correctly noted the *Strickland* standard and then used an incorrect shorthand version when stating its conclusion. *E.g., Stanley v. Bartley*, 465 F.3d 810, 813 (7th Cir. 2006) ("Having expounded the well-known standard correctly on the

(continued...)

Applying *Strickland* to the facts of the case, the appellate court's holding on this matter lies well within the boundaries of permissible differences of opinion. *Johnson v. Hulett*, 574 F.3d 428, 434 (7th Cir. 2009). As a general matter, alibi witnesses should be investigated and called, if available. *Raygoza*, 474 F.3d at 964; *Stanley*, 465 F.3d at 813-14. However, the appellate court did not act unreasonably in determining that Harold's alibi testimony did not create a reasonable probability of a different outcome. At trial, the judge could have believed that Harold didn't recall Woods leaving the night of the murder and still found that Woods committed the murder: Harold's testimony would not have conclusively established that Woods was not at Omar's Hazel Crest home that night, and at trial, two eyewitnesses is very strong evidence of guilt. Therefore, the appellate court's decision is a reasonable application of the *Strickland* standard to the facts of Woods' case; accordingly, the district court properly denied Woods' § 2254 petition.

## III.

Based on our review of the facts and circumstances surrounding the denial of Woods' third post-conviction petition, it is clear that the state court's decision does not fairly appear to either rest on or to be interwoven with

---

[3] (...continued)
previous page of its opinion, it is more likely that the court stated its conclusion imprecisely than that it applied a different standard." (citation omitted).

federal law. Thus, Woods' claims that his appellate counsel was ineffective for raising only a forfeited issue and that his trial counsel was ineffective for failing to challenge Kenya Wilson's ability to view the crime are procedurally defaulted. Additionally, Woods has not shown that failure to consider these claims will result in a miscarriage of justice; therefore, we are precluded from considering the merits of his claims. Furthermore, the Illinois Appellate Court's rejection of Woods' preserved ineffective assistance of counsel claim related to his trial counsel's failure to call Harold Woods as an alibi witness was not contrary to or an unreasonable application of clearly established federal law. Accordingly, the district court properly denied Woods habeas relief. We AFFIRM.