In the

# United States Court of Appeals

### For the Seventh Circuit

No. 09-2417

HENRY KACZMAREK,

*Petitioner-Appellant,*

*v.*

DAVE REDNOUR, Warden[1],

*Respondent-Appellee.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 07 C 06126—**Wayne R. Andersen**, *Judge.*

ARGUED SEPTEMBER 7, 2010—DECIDED NOVEMBER 17, 2010

Before FLAUM, ROVNER, and SYKES, *Circuit Judges.*

FLAUM, *Circuit Judge.* Henry Kaczmarek was convicted of murder in Illinois state court in 1996. At that time, the maximum sentence for murder in Illinois was forty

---

[1] The current warden at Menard Correctional Center, where Kaczmarek currently is confined, is Dave Rednour. Accordingly, Rednour is substituted for Donald Gaetz as a party pursuant to Fed. R. App. P. 43(c).

years, with the possibility of a sentence enhancement up to natural life if the crime was determined to be "accompanied by exceptionally brutal and heinous behavior indicative of wanton cruelty." 730 ILCS § 5/5-8-1(a)(1)(b). Kaczmarek was sentenced to life in prison based on the trial court's finding that the murder was exceptionally brutal and heinous. After exhausting his appeals in the Illinois state court system, Kaczmarek petitioned the district court for a writ of habeas corpus, contending that *Apprendi v. New Jersey*, 530 U.S. 466 (2000), entitled him to have a jury decide the factual issue underlying the sentence enhancement. The district court denied Kaczmarek's petition, but granted a Certificate of Appealability.

For the following reasons, we affirm.

## I. Background

On October 16, 2007, Kaczmarek filed a petition for a writ of habeas corpus, challenging the constitutionality of his custody in the Menard Correctional Center, where he is serving a sentence of natural life for his state court conviction of first-degree murder. Kaczmarek contends that, under *Apprendi*, the trial court violated his Sixth Amendment rights by imposing the extended-term sentence without submitting the underlying factual issue to a jury. Our review is controlled by the restrictive standards set forth in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *See* 28 U.S.C. § 2254. Under the AEDPA, state court factual

findings that are reasonably based on the record are presumed correct, and the petitioner bears the burden of rebutting that presumption by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1); *Todd v. Schomig*, 283 F.3d 842, 845 (7th Cir. 2002). The following summary of the facts is based on the Illinois Supreme Court's factual findings, which Kaczmarek does not challenge.

## A. Factual Background

In 1987, Kaczmarek broke into the apartment of 86-year-old Millie Nielsen. Kaczmarek stabbed, beat, and strangled Nielsen in the course of an attack that started in Nielsen's kitchen and concluded in her bedroom. Kaczmarek stole items of minimal value from the apartment, and was later apprehended while in possession of some of Nielsen's bloodstained personal belongings. At the time of his arrest, the shirt that Kaczmarek was wearing had bloodstains on it. Bloodstained jeans were found in the trunk of his car. At Kaczmarek's trial, a witness testified that, on the night of the murder, he saw Kaczmarek carrying a bag through the backyard of Nielsen's apartment building and placing it in the trunk of his car before driving away.

An expert in serology and DNA analysis, Pamela Fish, testified that the blood found on Kaczmarek's jacket and jeans was consistent with Nielsen's blood type and could not have come from Kaczmarek himself. Rod Englert, an expert in crime scene reconstruction and blood splatter, reviewed the physical evidence and crime scene photographs. He testified that blood smears on the

kitchen floor indicated a struggle in that area, and that blood splatter on the kitchen wall suggested that Nielsen had received numerous blows while on the kitchen floor. Englert also testified that the stains on Kaczmarek's clothing were not consistent with the defendant having picked up a bag with blood on it or a bag having been placed on top of the clothing. Finally, he stated the stains were not consistent with Kaczmarek having kneed another person in the nose.

Kaczmarek testified in his own defense, offering an explanation for the blood on his clothes and his possession of Nielsen's belongings. He stated that he had been involved in three fights on the night of Nielsen's murder, and suggested that the blood on his clothing came from one or more of those altercations. Kaczmarek testified that, in one of the fights, he struck a man who was attempting to break into his car three or four times in the face, and kneed the man in the nose. Kaczmarek also testified that he found a bag containing items taken from Nielsen's apartment next to her apartment building, and carried it to the trunk of his car. Based on that evidence, the jury found Kaczmarek guilty of murder.

**B.  Procedural History**

The statutory maximum for murder at the time of Kaczmarek's conviction was forty years, with the possibility of a sentence enhancement up to natural life if the crime was determined to be "accompanied by exceptionally brutal and heinous behavior indicative of wanton

cruelty." 730 ILCS § 5/5-8-1(a)(1)(b). The trial judge found that the crime was brutal and heinous and enhanced Kaczmarek's sentence to a term of natural life. The judge made that determination without the assistance of the jury. After Kaczmarek's trial, but before his direct appeal, the Supreme Court issued its decision in *Apprendi*, holding that any fact that increases the maximum punishment for a crime must be determined by a jury. Kaczmarek argued that his sentence violated *Apprendi* in his appellate brief.

On December 27, 2000, the Illinois Appellate Court upheld Kaczmarek's conviction but vacated his sentence, finding that the trial judge violated *Apprendi* by making his own factual finding on the question of whether Kaczmarek's crime was exceptionally brutal and heinous. The State appealed the vacated sentence, and on October 2, 2003, the Illinois Supreme Court reinstated Kaczmarek's sentence of natural life. *People v. Kaczmarek*, 798 N.E.2d 713 (Ill. 2003). The Illinois Supreme Court found that Kaczmarek's sentence violated *Apprendi* because the trial judge, and not a jury, made the finding that provided the basis for the sentence enhancement. *Id.* at 722. However, because Kaczmarek did not object at the time of sentencing as required by Illinois law, the court applied plain error review to determine whether resentencing was warranted. *Id.* The court concluded that Kaczmarek could not demonstrate that the *Apprendi* violation was prejudicial, as he must under plain error analysis, because his conduct "qualifie[d] as exceptionally brutal and heinous behavior indicative of wanton cruelty under *any* definition." *Id.* In particular, the court found that Kaczmarek's "senseless, vicious murder of [an] elderly woman, effected by means

of beating, stabbing and strangling, in order to perpetrate a robbery that could have been easily accomplished without killing her, undoubtedly qualifie[d] as exceptionally brutal and heinous behavior," and that "[t]he manner of the murder clearly indicate[d] that the defendant consciously inflicted unnecessary mental and physical suffering on his victim, indicative of wanton cruelty." 798 N.E.2d at 723. The court further concluded that "a jury, presented with these facts, would have found that the crime was committed in a brutal and heinous manner, indicative of wanton cruelty." *Id.* The United States Supreme Court denied Kaczmarek's petition for a writ of certiorari on February 23, 2004.

Kaczmarek next filed a petition for post-conviction relief in Illinois state court. That petition, which raised issues not presented in this appeal, was dismissed on June 14, 2004. The Illinois Appellate Court affirmed the dismissal on November 16, 2006, and the Illinois Supreme Court denied Kaczmarek's petition for leave to appeal on May 31, 2007.

On October 16, 2007, Kaczmarek filed a petition for a writ of habeas corpus, raising seven arguments, including that his sentence enhancement is unconstitutional under *Apprendi*. In an opinion dated February 9, 2009, the district court granted habeas relief on Kaczmarek's claim that his natural life sentence violated *Apprendi*, finding that subjective judgments—such as whether the "heinous and brutal conduct" requirement was met—could not be subject to plain error review. The district court denied habeas relief as to Kaczmarek's other claims.

Respondent filed a motion to reconsider, which the district court granted on April 21, 2009, reasoning that the Illinois Supreme Court's decision in this case did not represent an unreasonable application of *Apprendi* and its progeny, such that habeas relief was unavailable under 28 U.S.C. § 2254(d)(1). The district court denied the habeas petition in full, and *sua sponte* granted a certificate of appealability on the *Apprendi* issue. Kaczmarek timely appealed.

## II. Discussion

We review the district court's denial of a habeas petition de novo. *Ben-Yisrayl v. Buss,* 540 F.3d 542, 546 (7th Cir. 2008). Under the AEDPA, an application for a writ of habeas corpus "shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings" unless the state court decision (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2). Kaczmarek invokes 28 U.S.C. § 2254(d)(1) and argues that the decision of the Illinois Supreme Court was contrary to clearly established Supreme Court precedent.

Before we can reach the merits of Kaczmarek's claim, we must consider the State's contention that we are precluded from doing so because the Illinois Supreme Court's decision rests on an adequate and independent

state procedural ground. In other words, that the *Apprendi* claim is procedurally defaulted.

## A. Procedural Default

The State contends that the Illinois Supreme Court resolved Kaczmarek's *Apprendi* claim based on Illinois's waiver doctrine, under which the failure to contemporaneously object to a sentencing error constitutes a procedural bar to state court review absent plain error. *See People v. Hall*, 743 N.E.2d 521, 547-48 (Ill. 2000). When a state court resolves a federal claim by relying on a state law ground that is both independent of the federal question and adequate to support the judgment, federal habeas review of the claim is foreclosed. *Woods v. Schwartz*, 589 F.3d 368, 373 (7th Cir. 2009); *Coleman v. Thompson*, 501 U.S. 722, 729 (1991). The state law ground relied on by the state court can be procedural, in which case the claims are "commonly referred to as being procedurally defaulted." *Woods*, 589 F.3d at 373. Thus, when a state court refuses to reach the merits of a petitioner's federal claims because they were not raised in accord with the state's procedural rules (i.e., because the petitioner failed to contemporaneously object), that decision rests on independent and adequate state procedural grounds. *See Woods*, 589 F.3d at 373; *Gray v. Hardy*, 598 F.3d 324, 329 (7th Cir. 2010). A federal court on collateral review will not entertain a procedurally defaulted constitutional claim unless the petitioner can establish cause and prejudice for the default or that the failure to consider the

claim would result in a fundamental miscarriage of justice. *Johnson v. Loftus,* 518 F.3d 453, 455 (7th Cir. 2008).

In the habeas context, the application of the independent and adequate state ground doctrine, of which a procedural default is an instance, is not jurisdictional. *Trest v. Cain,* 522 U.S. 87, 89 (1997). Rather, grounded in concerns of comity and federalism, it "ensures that the States' interest in correcting their own mistakes is respected in all federal habeas cases." *Coleman*, 501 U.S. at 731-32. Procedural default is considered an affirmative defense that the State must raise and preserve to avoid waiver. *See Trest,* 522 U.S. at 89; *Perruquet v. Briley*, 390 F.3d 505, 515 (7th Cir. 2004). Generally, a party must plead affirmative defenses, such as procedural default, in its answer to properly preserve them. See FED. R. CIV. P. 8(c); *Robinson v. Johnson*, 313 F.3d 128, 137 (3d Cir. 2002) ("affirmative defenses under the AEDPA [must be] pleaded in the answer . . . [or] raised at the earliest practicable moment thereafter"); *Morrison v. Mahoney*, 399 F.3d 1042, 1046 (9th Cir. 2005) ("the defense of procedural default should be raised in the first responsive pleading in order to avoid waiver").

With these principles in mind, we consider the threshold question of whether the Illinois Supreme Court rejected Kaczmarek's *Apprendi* claim on an independent and adequate state ground. A state law ground is independent when the court actually relied on the procedural bar as an independent basis for its disposition of the case. *Smith v. McKee*, 598 F.3d 374, 382 (7th Cir. 2010). Here, in resolving the *Apprendi* claim, the court

noted that Kaczmarek had failed to object to his sentence in the trial court, and concluded that plain error did not excuse Kaczmarek's forfeiture because he could not demonstrate prejudice. The court relied on its earlier decision in *People v. Crespo,* 788 N.E.2d 1117, 1124 (Ill. 2001), in which it first applied plain error review to an *Apprendi* violation to which a defendant did not object at the time of trial. Thus, the state court resolved the *Apprendi* claim by applying the state's waiver doctrine, and the test for independence is met. *See Gray*, 598 F.3d at 329.

Kaczmarek disagrees, arguing that the state Supreme Court reached the merits of his *Apprendi* claim. We consistently have held that where a state court reviews a federal constitutional claim for plain error because of a state procedural bar (here, the doctrine of waiver), that limited review does not constitute a decision on the merits. *See id.* (citing cases). As Kaczmarek notes, in *Crespo*, on which the state court relied in this case, the Illinois Supreme Court cited a number of federal cases in concluding that the *Apprendi* violation in that case did not constitute plain error. 788 N.E.2d at 1124-25. But, as the Illinois Supreme Court explained in *People v. Herron*, 830 N.E.2d 467, 479 (Ill. 2005), the *Crespo* opinion referred to the plain-error standard set forth in United States Supreme Court cases only because the Illinois and federal plain error standards are similar, not because it was applying federal law.

A state law ground is adequate when it is a firmly established and regularly followed state practice at the

time it is applied. *Smith*, 598 F.3d at 382. Kaczmarek does not argue that the waiver rule is not an adequate ground for the Illinois Supreme Court's decision not to reach the merits of his *Apprendi* claim. The contemporaneous objection requirement appears to have been firmly established and regularly followed in 1996. *See People v. Mahaffey,* 651 N.E.2d 1055 (Ill. 1995); *People v. Hampton*, 594 N.E.2d 291 (Ill. 1992); *People v. Guest*, 503 N.E.2d 255 (Ill. 1986); *People v. Devin*, 444 N.E.2d 102 (Ill. 1982). Therefore, we conclude that the waiver rule also was an adequate state law ground. *See Gray*, 598 F.3d at 329 (Illinois waiver doctrine constitutes independent and adequate state ground where petitioner failed to object to *Apprendi* error at sentencing).

Therefore, Kaczmarek's *Apprendi* claim is procedurally defaulted. Normally, our next inquiry is whether Kaczmarek can avoid that default by showing cause and prejudice or the potential for a miscarriage of justice. However, here, the State belatedly raised procedural default for the first time in its motion to reconsider, and Kaczmarek claims that the State's actions amounted to an implicit waiver of the defense. While the State should have raised the defense in a more timely fashion, under the facts and circumstances of this case, we cannot conclude that the State waived the defense.

In its answer, the State asserted a procedural default defense as to some of Kaczmarek's claims, but not as to his *Apprendi* claim. Instead, the State addressed the merits of that claim, arguing that the state court's decision to apply a plain error standard, and its determina-

tion that there was no plain error, was not contrary to or an unreasonable application of clearly established Federal law, and was not based on an unreasonable determination of the facts.[2] Under similar circumstances—where the State did not raise procedural default and instead responded to a habeas claim on its merits—we have held that the State implicitly waived the defense. *See Bonner v. DeRobertis*, 798 F.2d 1062, 1066 & n.3 (7th Cir. 1986) (concluding that the State implicitly waived procedural default defense by addressing the merits of the claim and not arguing procedural default in the district

---

[2] On appeal, the State contends that it did not address the merits of the *Apprendi* claim in its answer because it did not argue that no *Apprendi* error occurred. But the State applied the AEDPA standard of review articulated in 28 U.S.C. § 2254(d), which is the standard used to evaluate the merits of a habeas application. *See Woodford v. Garceau*, 538 U.S. 202, 206 (2003) ("AEDPA in general and § 2254(d) in particular focus in large measure on revising the standards used for evaluating the merits of a habeas application"); *Horn v. Banks*, 536 U.S. 266, 269 (2002) (stating that the district court "rejected respondent's *Mills* claim on the merits" where it applied "the AEDPA standard of review articulated in 28 U.S.C. § 2254(d)"). Moreover, in its answer, the State itself characterized its response to the claim as being merits-based. In particular, the State's response to the *Apprendi* claim appeared under the heading "merits," and the State asserted that "[t]he Illinois Supreme Court resolved petitioner's claim on the merits, so review of that claim is governed by 28 U.S.C. § 2254(d)." Plainly, the State addressed the merits of Kaczmarek's *Apprendi* claim in its answer.

court or on appeal); *Buggs v. United States*, 153 F.3d 439, 444 (7th Cir. 1998) (government waived procedural default defense where it did not argue that petitioner procedurally defaulted claim and instead argued that the claim was meritless). And we have suggested that a State may implicitly waive the contention that a claim is procedurally defaulted by addressing the merits of that claim "while asserting that another is procedurally barred." *Perruquet*, 390 F.3d at 516; *see also Lewis v. Sternes*, 390 F.3d 1019, 1029 (7th Cir. 2004) ("One might infer that the State has implicitly waived a procedural default defense when it has asserted that defense as to some of the petitioner's claims but not as to the particular claim in question."). Finally, we have refused to address a procedural default argument that is raised for the first time on appeal where the State affirmatively took the position that the claim was not defaulted in the district court. *Cossel v. Miller*, 229 F.3d 649, 653 (7th Cir. 2000) ("[a] litigant that fails to present an argument to the district court cannot rely on that argument in the court of appeals, and this rule certainly encompasses a litigant that adopts a position on appeal that is contrary to its position in the district court.").

However, an important fact distinguishes this case from cases in which we have found implicit waiver. Here, the State raised procedural default before the district court in a motion for reconsideration. The parties fully briefed the issue in connection with that motion. Therefore, not only was the procedural default argument presented to the district court—albeit in an untimely fashion—but Kaczmarek was on notice that procedural

default could be an issue on appeal. Moreover, he took the opportunity to argue against the application of the bar in his reply brief.

In this context, waiver means the intentional relinquishment of a known right, not merely the failure to timely assert a right, which is properly referred to as forfeiture. *Perruquet*, 390 F.3d at 517; *see also United States v. Wesley*, 422 F.3d 509, 520 (7th Cir. 2005) ("A forfeiture is basically an oversight; a waiver is a deliberate decision not to present a ground for relief that might be available in the law."). Here, it appears that the State initially misread the state court's decision as addressing the merits of the *Apprendi* claim. Only later did the State recognize that the state court's review of the claim for plain error did not constitute a decision on the merits, but rather rested on state procedural grounds. While the State should have raised its default argument more promptly, its conduct does not evince an intent to waive the procedural default defense. Therefore, under the facts of this case, we cannot conclude that the State waived the procedural default defense.

While the district court chose not to address the State's procedural default argument, we find that doing so here is appropriate. *Perruquet*, in which the State had forfeited (but not waived) the procedural default defense by raising it for the first time on appeal, is instructive. As in that case, a number of factors persuade us to reach the procedural default defense here. 390 F.3d at 518. First, the procedural default is clear—Kaczmarek did not object at sentencing, and, because of that failure

to comply with state procedural rules, the state court reviewed his claim for plain error. That review did not constitute adjudication on the merits, and consequently did not cure Kaczmarek's default. *Miranda v. Leibach*, 394 F.3d 984, 992 (7th Cir. 2005). Second, because "no Illinois court was ever given the opportunity to pass on the merits of [Kaczmarek's] constitutional claim, comity and federalism principles weigh strongly against permitting [Kaczmarek] to assert the claim in federal court." *Perruquet*, 390 F.3d at 518. Third, absent procedural default, we would address the merits of Kaczmarek's claim de novo, resulting in a windfall to Kaczmarek for failing to properly object. For these reasons, and because the State's waiver was unintentional and Kaczmarek had an opportunity to address the issue, we will entertain the State's procedural default defense.[3]

---

[3] While we conclude that addressing the procedural default defense is appropriate under the circumstances of this case, we note that the question of waiver could have been avoided had the State not misconstrued the basis for the Illinois Supreme Court's decision in the first instance. As we previously have noted, habeas corpus law "is subtle and intricate; mistakes are easy to make. But it is a body of law of which the lawyers employed by a state attorney general should be masters. Failing to achieve such mastery, they should not blame federal judges for springing dangerous criminals free to prey on the citizenry whose safety the attorney general is sworn to protect." *Fagan v. Washington*, 942 F.2d 1155, 1157 (7th Cir. 1991).

**B.  Cause and Prejudice**

Having concluded that Kaczmarek's *Apprendi* claim is procedurally defaulted, we cannot revisit the *Apprendi* issue unless Kaczmarek can establish cause and prejudice for the default, or the potential for a miscarriage of justice. Kaczmarek does not argue that he can meet these standards. Moreover, our precedents clearly establish that the fact that Kaczmarek was sentenced before *Apprendi* was decided does not establish cause, as "an *Apprendi*-like objection was available to defendants even before the Supreme Court issued its decision, and, indeed, defendants began making the argument soon after the federal sentencing guidelines came into being." *Gray*, 598 F.3d at 330; *see also Valenzuela v. United States*, 261 F.3d 694, 700 n.2 (7th Cir. 2001) ("the novelty of *Apprendi* does not constitute cause for failing to raise the issue earlier because 'the foundation for *Apprendi* was laid long before 1992'") (citing *Garrott v. United States*, 238 F.3d 903, 905 (7th Cir. 2001)). Because Kaczmarek has not established cause and prejudice, we cannot consider his *Apprendi* claim. *See, e.g.*, *Crockett v. Hulick*, 542 F.3d 1183, 1193 (7th Cir. 2008); *Todd*, 283 F.3d at 849.

**C.  Defective Indictment Claim**

Kaczmarek also contends that his sentence violated *Apprendi* because his indictment did not charge that he was potentially eligible for a sentence enhancement for brutal or heinous conduct. According to Kaczmarek, *Apprendi* requires facts that increase the maximum

penalty for a crime to be charged in the indictment. Kaczmarek included this argument in the habeas petition filed in the district court, summarizing his second claim as asserting that his sentence violated *Apprendi*, "in which the U.S. Supreme Court held that facts that increase the prescribed range of penalties must be charged in the indictment, submitted to the jury, and proved beyond a reasonable doubt." However, the district court appears to have overlooked the argument, as it did not address the indictment issue. Nor did the Illinois Supreme Court address the issue, although Kaczmarek briefed the issue in that court. "The matter of what questions may be taken up and resolved for the first time on appeal is one left primarily to the discretion of the courts of appeals, to be exercised on the facts of individual cases." *Singleton v. Wulff,* 428 U.S. 106, 121 (1976); *see also Sprosty v. Buchler*, 79 F.3d 635, 645-46 (7th Cir. 1996). We will entertain the claim because Kaczmarek preserved the issue, the issue has been fully briefed, and—because we conclude that the claim is meritless—it is in the interest of judicial economy that we address it.

Kaczmarek's claim is based on a misreading of *Apprendi*. In *Apprendi,* the Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490. The *Apprendi* Court noted that its decision was foreshadowed by *Jones v. United States*, 526 U.S. 227, 243 n.6 (1999), in which it held that, in the context of federal prosecutions, "any

fact (other than prior conviction) that increases the maximum penalty for a crime must be charged in an indictment, submitted to a jury, and proved beyond a reasonable doubt." However, in *Apprendi*, the Court expressly refused to address whether facts that increase the maximum penalty must be charged in the indictment in state prosecutions, as that question was not before it. 530 U.S. at 477 n.3. Thus, under current Supreme Court precedent, such aggravating facts must be charged in the indictment in federal prosecutions only. *See United States v. Cotton*, 535 U.S. 625, 627 (2002) (under *Apprendi* and *Jones*, "[i]n federal prosecutions, . . . facts [that increase the penalty for a crime beyond the prescribed statutory maximum] must also be charged in the indictment"); *see also Williams v. Haviland*, 467 F.3d 527, 532-33 (6th Cir. 2006) (reversing grant of habeas petition where district court erroneously concluded that *Apprendi* recognized a right to have sentence enhancements charged in the indictment).

Kaczmarek relies on our decision in *United States v. Watts*, 256 F.3d 630, 631, n.2 (7th Cir. 2001), in which we noted that we have "read *Apprendi* to require that certain facts must be charged in the indictment, as well as submitted to a jury and proven beyond a reasonable doubt." However, *Watts*, and the cases cited therein, involved federal prosecutions. Kaczmarek cites no case in which a court has interpreted *Apprendi* to require that sentence enhancements be charged in state prosecutions.

On appeal, Kaczmarek characterizes his indictment claim as alleging a violation of his Sixth Amendment

right to notice of the charges against him. The Sixth Amendment guarantees a criminal defendant the fundamental right to be informed of the nature and cause of the charges made against him so as to permit adequate preparation of a defense. *See* U.S. CONST. amend. VI ("In all criminal prosecutions, the accused shall enjoy the right . . . to be informed of the nature and cause of the accusation. . . ."); *Cole v. Arkansas,* 333 U.S. 196, 201 (1948) ("It is as much a violation of due process to send an accused to prison following conviction of a charge on which he was never tried as it would be to convict him upon a charge that was never made."); *Bae v. Peters*, 950 F.2d 469, 477 (7th Cir. 1991) ("a criminal defendant must receive adequate notice of the charges against him so that he may defend himself against those charges"). This right to notice is applicable to the states through the due process clause of the Fourteenth Amendment. *See Cole,* 333 U.S. at 201 ("No principle of procedural due process is more clearly established than that notice of the specific charge, and a chance to be heard in a trial of the issues raised by that charge, if desired, are among the constitutional rights of every accused in a criminal proceeding in all courts, state or federal.").

We need not consider whether Kaczmarek could establish a Sixth Amendment right to notice claim because such a claim is distinct from an *Apprendi* claim. *See Gautt v. Lewis*, 489 F.3d 993, 1005 & n.12 (9th Cir. 2007). Kaczmarek did not present an independent right-to-notice claim to the district court, and consequently he has forfeited his ability to raise it for the first time on appeal. *Pole v. Randolph*, 570 F.3d 922, 940 (7th Cir. 2009)

### III.  Conclusion

For the foregoing reasons, we AFFIRM the district court's judgment.