In the

# United States Court of Appeals

## For the Seventh Circuit

Nos. 12-1619 & 12-1747

FLOYD RICHARDSON,

*Petitioner-Appellee/Cross-Appellant*,

*v.*

MICHAEL LEMKE,

*Respondent-Appellant/Cross-Appellee.*

Appeals from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:00-cv-06245 — **Matthew F. Kennelly**, *Judge.*

ARGUED SEPTEMBER 30, 2013 — DECIDED MARCH 11, 2014

Before WOOD, *Chief Judge*, and BAUER and KANNE, *Circuit Judges.*

KANNE, *Circuit Judge.* Before us is a petition for a writ of habeas corpus, filed by Floyd Richardson, a convicted murderer. It is the second time his case has come before this court. The district court granted Richardson's petition on *Batson* grounds, a decision which the State of Illinois appeals. Richardson, in turn, appeals the district court's denial of his eviden-

tiary/due process and ineffective assistance of counsel claims. We reverse in part and affirm in part. First, we reverse the district court's grant of habeas relief on *Batson* grounds. Richardson procedurally defaulted a challenge to the prosecution's use of peremptories by failing to contemporaneously object, and he has not shown cause to excuse that default. Our review is foreclosed. Next, we affirm the district court's treatment of the remaining two claims. Richardson's petition is denied.

## I. BACKGROUND

In 1984, Floyd Richardson was convicted of armed robbery and murder. During his jury trial, the State of Illinois presented ballistics evidence and identification testimony tying Richardson to a pair of shootings that took place at South Side businesses in April 1980. A Chicago Police Department firearms examiner testified that rounds fired at both scenes came from the same gun, and eyewitnesses from both scenes identified Richardson as the gunman. That was enough to persuade the jury to convict, and the trial court sentenced Richardson to death.[1] We discussed Richardson's trial and sentencing hearing in detail in our previous opinion in this case, *see Richardson v. Briley*, 401 F.3d 794, 795–98 (7th Cir. 2005), and here we address only those facts that are pertinent to the claims presently at issue.

We begin by surveying the factual and procedural history of Richardson's *Batson* claim, which was the basis for the

---

[1]  Richardson's sentence has since been commuted to life in prison without the possibility of parole.

district court's grant of a writ of habeas corpus and which is the subject of the State's appeal. We then provide the background to Richardson's "other crimes evidence" and ineffective-assistance-at-sentencing claims, which were denied by the district court and which are the subject of Richardson's cross-appeal.

*A.  Jury Selection and Related Assistance-of-Counsel Issues*

The first issue—and the subject of the State's appeal—is Richardson's challenge to the State's use of peremptory strikes. Richardson's jury was selected in panels of four. The trial judge conducted *voir dire* and did not allow the parties to question the members of the venire. In all, sixty-one persons were questioned during jury selection. The trial judge excused twenty-four for cause. Richardson used twenty peremptory challenges, and the State used sixteen. Richardson did not object to the State's use of peremptories at trial.

*1.  State Appellate and Postconviction Proceedings*

After sentencing, Richardson appealed to the Illinois Supreme Court. While his appeal was pending, the Supreme Court decided *Batson v. Kentucky*, 476 U.S. 79 (1986). Nonetheless, Richardson again failed to make an issue of the State's use of peremptories. The Illinois Supreme Court affirmed his conviction and sentence without addressing any jury selection issues. *People v. Richardson*, 528 N.E.2d 612 (Ill. 1988). His petitions for rehearing and for a writ of certiorari were denied.

In 1991, Richardson filed a petition for postconviction relief in state court. It was at this point, seven years after his trial concluded, that his *Batson* claim first appeared. He also

attacked both trial and appellate counsel as constitutionally ineffective for their failure to raise the issue sooner. The State moved to dismiss the petition. The trial court found that the *Batson* claim was waived under existing Illinois law as a result of Richardson's failure to object to the State's use of peremptories at trial. Nonetheless, the court went on to consider the claim on the merits, in part because of its connection to the ineffective assistance issues.

In considering Richardson's *Batson* claim, the trial court reviewed the pleadings, the associated exhibits, and the record available to it, but did not hold an evidentiary hearing or allow for any expansion of the record. This procedure was based on the Illinois Postconviction Hearing Act, which permitted "summary dismissal" of a "nonmeritorious petition" based on a review of the petitioner's submissions and existing record materials. *People v. Mahaffey*, 651 N.E.2d 174, 179 (Ill. 1995).

On the record before it, the trial court found that thirteen of the sixteen jurors peremptorily excluded by the prosecution were black, but that the race of the other three stricken jurors was unclear. It further found that the record did not show what percentage of the venire members *not* challenged for cause were black, but that, of the fourteen jurors and alternates actually seated, eight were white and three were black, with the race of the other three unknown. The trial court also considered that fifteen of the sixteen stricken jurors shared a non-suspect common characteristic in that none had ever been the victim of a crime. It concluded—relying in significant part on the inadequacy of the existing record—that Richardson had not made out a *prima facie* case that the strikes were used in a discriminatory manner. It also found that neither trial counsel

nor appellate counsel was constitutionally ineffective. Richardson's petition was dismissed.

Richardson appealed. The Illinois Supreme Court found that his *Batson* claim was waived, and declined to review it on the merits. *People v. Richardson*, 727 N.E.2d 362, 368–69 (Ill. 2000). In doing so, first, the court correctly observed that *Batson* was at least theoretically available to Richardson, because it was decided while his case was pending on direct review. *Id*. at 368 (citing *Griffith v. Kentucky*, 479 U.S. 314 (1987)). But the court then relied on a series of Illinois cases managing the retroactive preservation of *Batson* claims to find waiver:

> However, *Batson* requires "a defendant's *timely* objection to a prosecutor's challenges." (Emphasis added.) *Batson*, 476 U.S. at 99. A defendant who fails to raise a *Batson* objection before the jury is sworn waives the issue. *People v. Fair*, 636 N.E.2d 455 (Ill. 1994). This rule applied under the old rule of *Swain* (*e.g.*, *People v. Gaines*, 430 N.E.2d 1046 (Ill. 1981)) and applies to cases pending on appeal when *Batson* was decided (*e.g.*, *People v. Evans*, 530 N.E.2d 1360 (Ill. 1988); *accord People v. Holder*, 506 N.E.2d 407 (Ill. 1987)). Thus, a defendant who failed to object to the prosecution's use of peremptory challenges under the old rule of *Swain* cannot receive on appeal the benefit of the new rule announced in *Batson*. *People v. Pecor*, 606 N.E.2d 1127 (Ill. 1992); *accord Teague v. Lane*, 489 U.S. 288, 297 (1989) (under Illinois law, failure to raise *Swain* claim at trial and on direct review waives *Batson*-type claim in state post-conviction proceeding).

> In this case, defendant concedes, as our review of the record confirms, that his trial counsel did not object during *voir dire* to the prosecution's use of its peremptory challenges or include this issue in the post-trial motion. We note that while defendant's direct appeal was being briefed, this court remanded several pending cases to trial courts for *Batson* hearings, where the *Batson* issue was timely raised at trial. *People v. Hooper*, 506 N.E.2d 1305 (Ill. 1987) (Ryan, J., concurring) (describing court as remanding "all cases on review in which the *Batson* issue is viable" to circuit courts for *Batson* hearings); *see, e.g.*, *Evans*, 530 N.E.2d 1360. Defendant has waived this claim.

*Richardson*, 727 N.E.2d at 368–69 (internal citations reformatted for clarity). The United States Supreme Court again denied certiorari. *Richardson v. Illinois*, 531 U.S. 871 (2000).

The Illinois Supreme Court also considered Richardson's ineffective assistance claim. Richardson explicitly abandoned his claim that trial counsel was ineffective for failing to raise a *Batson* objection, *see* 727 N.E.2d at 369, but continued to maintain that appellate counsel was ineffective for the same reason. The court disagreed, finding that appellate counsel could not be considered constitutionally ineffective for failing to argue a waived claim. 727 N.E.2d at 369–70.

### 2. Federal Proceedings

Richardson's next move, in 2000, was to file in federal court seeking a writ of habeas corpus on various grounds, including the *Batson* claim he unsuccessfully asserted in state postconviction proceedings. The district court conducted an

evidentiary hearing and granted habeas relief on the grounds that the prosecution deceived Richardson into neglecting to call an exculpatory witness. On appeal, we reversed. *Richardson v. Briley*, 401 F.3d 794. We found that Richardson was not prejudiced by the prosecutor's alleged misconduct, and remanded for further proceedings on the unresolved claims. *Id.* at 803.

The district court turned to the *Batson* claim on remand. *Richardson v. McCann*, 653 F. Supp. 2d 831 (N.D. Ill. 2008). The court held that the claim was procedurally defaulted—the Illinois Supreme Court's finding of waiver was an independent and adequate state law ground for dismissal. But the court also found that Richardson could likely establish cause for the default and actual prejudice arising therefrom.

With respect to cause, the district judge found that Richardson's default—his failure to object to the State's use of peremptories during jury selection—occurred because there was no "reasonable basis" for such an objection at the time of trial. In the alternative, if a *Batson* or "proto-*Batson*" claim *was* available, the district court found that both trial and appellate counsel were constitutionally ineffective for failing to raise it.

With respect to prejudice, the district judge explained that his determination would inevitably be tied to the merits, but he noted that the nature of Richardson's claim meant—if it was true, and if the prosecution really did purposefully exclude black prospective jurors from service—that he was almost certainly prejudiced. For the foregoing reasons, and because he found that Richardson had diligently attempted to expand the record during state court postconviction proceedings, the

district judge concluded that an evidentiary hearing was warranted.

In a corrected memorandum opinion issued on March 13, 2012, *Richardson v. Hardy*, 855 F. Supp. 2d 809 (N.D. Ill. 2012), the district judge granted habeas relief on *Batson* grounds. The court maintained its prior position with regard to the issues of procedural default and cause therefor: while the *Batson* claim was procedurally defaulted, the default was excused because there was no reasonable basis for it at the time of trial, or, in the alternative, because trial and appellate counsel were constitutionally ineffective for failing to raise the issue in a timely fashion.

Turning to the related questions of actual prejudice and the merits of the claim,[2] the district judge reviewed the expanded record. In addition to the information available to the state trial court on postconviction review, the district judge was able to ascertain that all sixteen of the prosecution's peremptory strikes were used on black jurors, and that the net effect of those strikes was to produce a petit jury that was one-third black and two-thirds white. Those figures stood in contrast to the composition of the total number of prospective jurors tendered to the prosecution, of which fifty-six percent were

---

[2]  The district court was correct to consider the question of prejudice as dependent upon the merits, without engaging in a harmless error analysis. "*Batson* itself as well as the cases that follow it confirm that when a violation of equal protection in jury selection has been proven, the remedy is a new trial, without the need for any inquiry into harmless error or examination of the empaneled jury." *Winston v. Boatwright*, 649 F.3d 618, 627 (7th Cir. 2011). In other words, a *Batson* violation is a structural error. *Id.* at 628–29.

black and forty-four percent were white. Based on the starting point, the end point, and several observations about the path from the former to the latter, the district judge concluded that Richardson had made out a *prima facie* case under *Batson*.

Next, the district court found that the purported non-discriminatory reasons for the prosecution's use of peremptory strikes—which were largely conjectural and circumstantial, given that the prosecutors themselves could not recall their motives from over 30 years ago—could not satisfactorily explain all sixteen of the challenged strikes. Although it held Richardson to his burden of persuasion, it found that burden to be discharged and granted the writ. The State of Illinois appeals.

### B.   Richardson's Cross-Appeal

In granting the writ on *Batson* grounds, the district court also considered Richardson's remaining claims, each of which, it concluded, lacked merit. Richardson appeals the resolution of two of them: (1) his claim that the admission of certain "other crimes evidence" rendered his trial unfair; and (2) his claim that trial counsel was constitutionally ineffective during the sentencing phase. Although the district court denied relief on both grounds, it issued a certificate of appealability with respect to the latter. We expanded the certificate to include the former.

#### 1.   Other Crimes Evidence

Richardson was convicted of the April 1, 1980, armed robbery of Twin Foods & Liquors, a convenience store located on the South Side of Chicago. He was also convicted of the

contemporaneous murder of George Vrabel, an employee of the store. During the trial, however, evidence of two non-charged criminal incidents was also introduced. First, the prosecution introduced evidence pertaining to an April 5, 1980, robbery and shooting at a tavern about one mile away. The prosecution tied the two 1980 robberies together with ballistics evidence and relied on identification testimony from witnesses at both crime scenes to attain a conviction. Second, the prosecution introduced evidence of an armed robbery that occurred on May 4, 1982. On that occasion, police had arrested Richardson in the vicinity of the crime because he matched a description of the perpetrator.

### a.  State Court Proceedings

Richardson objected to the introduction of the foregoing evidence at trial. The trial court ruled that the April 5, 1980, evidence was admissible for the purpose of proving the defendant's identity and that the May 4, 1982, evidence was admissible to explain the circumstances of Richardson's arrest. On direct appeal, Richardson renewed his objection. The Illinois Supreme Court acknowledged the dangers attendant to the introduction of other crimes evidence, but found that the April 5th evidence was "highly relevant and admissible" for the purpose of identifying Richardson as the April 1st shooter. 528 N.E.2d at 617. The Illinois Supreme Court did agree with Richardson that there was no justifiable basis for the admission of the May 4th evidence, but it concluded that the erroneous admission was harmless. *Id*. at 619. Richardson did not continue to pursue his other crimes evidence claims in state postconviction proceedings, and the postconviction opinions

of both the trial court and the Illinois Supreme Court contain no reference to it.

### b. *Federal Court Proceedings*

The district court refused to grant habeas relief based on Richardson's other crimes claim in its corrected memorandum opinion. *Richardson*, 855 F. Supp. 2d at 814–17. Because the Illinois Supreme Court decided the issue on the merits on direct appeal, the district court asked whether that court's decision was contrary to, or an unreasonable application of, clearly established federal law as determined by the Supreme Court of the Untied States. 28 U.S.C. § 2254(d)(1). The district court found that it was not. Although the Federal Rules of Evidence do limit the introduction of evidence of uncharged criminal behavior, *see* Fed. R. Evid. 404(b), there is no federal constitutional or statutory right to a state-court trial free of such evidence, even where that evidence is used to show propensity.[3] Relief, therefore, could only be available under a general procedural due process theory. The district court could not say that the Illinois Supreme Court decision amounted to an unreasonable application of general due process principles, and so denied relief. Richardson appeals.

### 2. *Ineffective Assistance at Sentencing*

Richardson was convicted of armed robbery and of the murder of George Vrabel by a jury in 1984, but his sentence was determined by the trial judge. During the sentencing

---

[3] Although the Federal Rules of Evidence are considered federal statutory law and are codified in Title 28 of the United States Code, they apply, by their terms, only to proceedings in federal courts. Fed. R. Evid. 101(a).

phase, the State of Illinois introduced substantial evidence in aggravation, consisting mostly of evidence of Richardson's egregiously criminal past. In mitigation, Richardson's trial counsel offered the testimony of Richardson, his mother, and his sometime paramour. The testimony of the women was primarily character evidence, consisting of claims that Richardson was a good father and a good son, with his heart in the right place. Richardson himself downplayed his involvement with some of the criminal incidents cited by the prosecution, justified his participation in others, and admitted to the remainder. The trial court sentenced Richardson to death.

### a.   State Court Proceedings

Richardson first attacked trial counsel's sentencing-phase performance in his state-court motion for postconviction relief. His claim is that counsel was ineffective for failing to investigate and introduce potentially mitigating evidence, including traumatic aspects of Richardson's childhood and social history as well as his diminished mental capacity. The Illinois Supreme Court, applying the *Strickland* standard, concluded that counsel's performance was not deficient. 727 N.E.2d at 369–74 (citing *Strickland v. Washington*, 466 U.S. 668 (1984)). In the court's view, to introduce evidence of Richardson's diminished mental capacity—the mitigating value of which would be decreased culpability for his actions—would have been incompatible with Richardson's continued protestations that he was innocent. *Id*. at 372. In the alternative, the court saw no prejudice; the balance of aggravators versus mitigators was so lopsided that, even if the evidence Richardson sought had been introduced, there was virtually no possibility of a sentence other than death. *Id*. at 372–73. Moreover, the court felt that the

trial court would likely have viewed additional evidence of Richardson's troubled personal and social history as aggravating, rather than mitigating. *Id*. at 374. It denied relief.

### b.  Federal Court Proceedings

By the time Richardson's ineffective-assistance-at-sentencing claim was decided by the district court, his sentence had been commuted to life in prison without the possibility of parole. But that did not necessarily render the claim moot; Richardson would still be entitled to relief if adequate representation would have resulted in a sentence to a term of years. Applying the deferential § 2254(d) standards to the Illinois Supreme Court's analysis, the district court expressed some doubt about that court's conclusion that trial counsel had made a deliberate choice to forego the presentation of evidence related to Richardson's diminished mental capacity. In the district court's view, the evidence suggested that trial counsel had not investigated the issue *at all*, which requires a slightly different *Strickland* performance analysis. But the district court ruled that the state court's application of the prejudice prong of the *Strickland* test was not unreasonable, and for that reason alone, Richardson's claim could not be successful. Richardson now appeals the district court's conclusion.

## II. ANALYSIS

We begin with the State's appeal of the district court's treatment of the *Batson* claim. We agree with the district court that Richardson procedurally defaulted the claim, and that his default was indeed an independent and adequate state law ground for the Illinois Supreme Court's judgment. We part ways with the district court, however, on the issue of cause to

excuse the default. Richardson cannot rely on the performance
of trial counsel as cause because he failed to independently
preserve that claim. He cannot rely on the performance of
appellate counsel as cause because appellate counsel was not
constitutionally ineffective. Finally, he cannot rely on the rule
of *Reed v. Ross*, 468 U.S. 1, 17 (1984), because it does not apply
to this case. Richardson's failure to show cause to excuse his
default means that our review is foreclosed; we need not
consider the question of actual prejudice.

Next, we turn to the two claims which lie at the core of
Richardson's cross-appeal. We affirm the district court's denial
of habeas relief on both grounds. The Illinois Supreme Court
confronted each issue on the merits, so we apply the deferen-
tial standard of review codified in the Antiterrorism and
Effective Death Penalty Act of 1996 ("AEDPA"), and we find
that the state court's treatment of the issues was not unreason-
able. The end result is that Richardson's petition is denied in
full.

### A.  Batson Claim

We cannot review Richardson's *Batson* claim on the merits
without first grappling with the fact that the Illinois Supreme
Court, as the last state court to address the issue, appeared to
resolve it on the state law ground of waiver. "When a state
court resolves a federal claim by relying on a state law ground
that is both independent of the federal question and adequate
to support the judgment, federal habeas review of the claim is
foreclosed." *Kaczmarek v. Rednour*, 627 F.3d 586, 591 (7th Cir.
2010) (citing *Woods v. Schwartz*, 589 F.3d 368, 373 (7th Cir.
2009); *Coleman v. Thompson*, 501 U.S. 722, 729 (1991)). In the

habeas context, the "independent and adequate state ground" doctrine does not serve as a jurisdictional bar. It is based instead on "equitable considerations of federalism and comity," *Lambrix v. Singletary*, 520 U.S. 518, 523 (1997), and it serves to ensure "that the States' interest in correcting their own mistakes is respected in all federal habeas cases." *Coleman*, 501 U.S. at 732; *see also Dretke v. Haley*, 541 U.S. 386, 392–93 (2004) (referring to the rule as "prudential" in origin).

The doctrine applies regardless of whether the state law ground is substantive or procedural. *Coleman*, 501 U.S. at 729. But given what a petition for habeas corpus is, the substantive merit of a legal claim contained therein is bound to be governed by federal law. Accordingly, when a state court relies on an independent and adequate *state* law ground to resolve such a claim, that state law ground is usually procedural. We refer to claims resolved in this way as being procedurally defaulted. *Woods*, 589 F.3d at 373.

Procedural defaults take several forms, but two are paradigmatic. On the one hand, a claim might be procedurally defaulted when a petitioner fails to "fairly present" his claim to the state courts, regardless of whether he initially preserved it with an objection at the trial level. To fairly present his federal claim, a petitioner must assert that claim throughout at least one complete round of state-court review, whether on direct appeal of his conviction or in post-conviction proceedings. *McDowell v. Lemke*, 737 F.3d 476, 482 (7th Cir. 2013); *see also O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). The complete round requirement means that the petitioner must raise the issue at each and every level in the state court system, including levels at which review is discretionary rather than

mandatory. *Lewis v. Sternes*, 390 F.3d 1019, 1025–26 (7th Cir. 2004) (citing *O'Sullivan*, 526 U.S. at 845–46).[4] On the other hand, a claim might be procedurally defaulted through a petitioner's initial failure to preserve it with an objection, even if the petitioner later does attempt to present it for review. "[W]hen a state court refuses to reach the merits of a petitioner's federal claims because they were not raised in accord with the state's procedural rules (i.e., because the petitioner failed to contemporaneously object), that decision rests on independent and adequate state procedural grounds." *Kaczmarek*, 627 F.3d at 591 (citing *Woods*, 589 F.3d at 373; *Gray v. Hardy*, 598 F.3d 324, 329 (7th Cir. 2010)).

The last state court to consider Richardson's *Batson* claim was the Illinois Supreme Court, on postconviction review. *Richardson*, 727 N.E.2d at 368–69. The court found that Richardson had "waived this claim" by failing to contemporaneously object to the State's use of peremptories.[5] *Id*. at 369. The waiver

---

[4]  This first sort of procedural default is an outgrowth of the statutory requirement that a habeas petitioner exhaust his remedies in state court before taking his case to federal court. "Inherent in the habeas petitioner's obligation to exhaust his state court remedies before seeking relief in habeas corpus, *see* 28 U.S.C. § 2254(b)(1)(A), is the duty to fairly present his federal claims to the state courts." *Lewis*, 390 F.3d at 1025. "Only if the state courts have had the first opportunity to hear the claim sought to be vindicated in the federal habeas proceeding does it make sense to speak of the exhaustion of state remedies." *Picard v. Connor*, 404 U.S. 270, 276 (1971). *Cf. Lieberman v. Thomas*, 505 F.3d 665, 669–70 (7th Cir. 2007) (failure to exhaust is a procedural default).

[5]  We need not discuss whether Richardson's failure to object constituted a
(continued...)

finding unquestionably was the basis for the court's decision, and it certainly looks like a procedural default. *See, e.g., Kaczmarek*, 627 F.3d at 591 (referring to failure to contemporaneously object as a procedural default); *Brooks v. Walls*, 279 F.3d 518, 522 (7th Cir. 2002) (using the same example).

Richardson admits that the waiver ruling was procedural in nature, but he argues that it was based on a *federal* rule of procedure, despite the fact that it was issued by a state court. Thus, he argues, while his claim may have been defaulted, that default was not an "independent," nor an "adequate," state ground for the decision. The district court disagreed. We review procedural defaults and related issues *de novo*, *Page v. Frank*, 343 F.3d 901, 905 (7th Cir. 2003), and we discuss the independence and the adequacy of the waiver finding sequentially.

*1.  Independence of Waiver Finding*

Richardson is right to stress that the mere invocation of a state law rule does not necessarily create an "independent" state law ground to support a judgment. The state court must actually have relied on that rule—and not on a parallel or interwoven federal basis—in order to foreclose our review. *Caldwell v. Mississippi*, 472 U.S. 320, 327 (1985) ("The mere existence of a basis for a state procedural bar does not deprive this Court of jurisdiction; the state court must actually have

---

[5] (...continued)
"waiver" or a "forfeiture" under our own case law, as the Illinois Supreme Court is free to decide what to call such a failure within that state's judicial system.

relied on the procedural bar as an independent basis for its disposition of the case."). We do not construe genuine ambiguity in favor of the state; if it "fairly appears" that the state court rested its decision primarily on federal law or is interwoven therewith, a federal court may review the federal question unless the state court's opinion contains a "plain statement" that its decision rests on state grounds. *Harris v. Reed*, 489 U.S. 255, 261 (1989).

Richardson's position is that the Illinois Supreme Court's opinion was ambiguous. His argument depends on lifting a single phrase out of context: "*Batson* requires 'a defendant's *timely* objection to a prosecutor's challenges.'" 727 N.E.2d at 368 (quoting *Batson*, 476 U.S. at 99) (emphasis original). He believes the state court relied on a federal timely objection requirement intrinsic to *Batson* itself, and that its state law waiver decision therefore at least appeared to be interwoven with federal law. We disagree. The state court opinion was not ambiguous, and it plainly does not bear Richardson's interpretation.

First, Richardson seems to think that the mere mention of a federal case creates an ambiguity. But the sort of ambiguity that is necessary to justify abandoning our position of deference to state court judgments is not merely semantic or superficial. Under the Supreme Court's applicable precedents, we are concerned with the grounds on which the state court decision fairly appears to "rest," or to "rely." *See, e.g., Coleman*, 501 U.S. at 736; *Caldwell*, 472 U.S. at 327; *Harris*, 489 U.S. at 261. The context surrounding the sentence cherry-picked by the petitioner makes it abundantly clear that the Illinois Supreme Court relied on an Illinois rule governing the preservation of

claims related to jury composition, one which remained unchanged throughout the *Swain-Batson* transition:

> A defendant who fails to raise a *Batson* objection before the jury is sworn waives the issue. *People v. Fair*, 636 N.E.2d 455 (Ill. 1994). This rule applied under the old rule of *Swain* (*e.g.*, *People v. Gaines*, 430 N.E.2d 1046 (Ill. 1981)) and applies to cases pending on appeal when *Batson* was decided (*e.g.*, *People v. Evans*, 530 N.E.2d 1360 (Ill. 1988); *accord People v. Holder*, 506 N.E.2d 407 (Ill. 1987)). Thus, a defendant who failed to object to the prosecution's use of peremptory challenges under the old rule of *Swain* cannot receive on appeal the benefit of the new rule announced in *Batson*. *People v. Pecor*, 606 N.E.2d 1127 (Ill. 1992)[.]

727 N.E.2d at 368 (citations reformatted for clarity). No reasonable reader could understand the Illinois Supreme Court to be relying on a waiver requirement intrinsic to *Batson* when its opinion explicitly states that the rule on which it relies *predates* that decision.

Second, the federal timing requirement on which Richardson claims the state court partially relied simply does not exist. Certainly a defendant must raise a *Batson* claim to have a *Batson* claim; that is true of any legal argument. But the Supreme Court has never gone so far as to impose specific requirements on the states in the *Batson* context. In *Batson*, the Supreme Court "imposed no new procedural rules and declined either 'to formulate particular procedures to be followed upon a defendant's timely objection to a prosecutor's challenges,' or to decide when an objection must be made to be

timely." *Ford v. Georgia*, 498 U.S. 411, 423 (1991) (quoting *Batson*, 476 U.S. at 99–100). There was a reason for that. Federal courts, as a general rule, do not tell state courts when and how to require an objection, and "[t]he appropriateness … of looking to *local* rules for the law governing the timeliness of a constitutional claim is … clear." *Id*. (emphasis added); *see also Hogan v. McBride*, 74 F.3d 144, 146 (7th Cir. 1996) ("failure to present a claim at the time, and in the way, required by the state is an independent state ground of decision, barring review in federal court."). We do not think any reasonable reader could understand the state court to have relied on a federal directive that does not exist.

Third, even if Richardson's premise—that the state court derived a timely objection requirement from *Batson* itself—was accurate, his conclusion would still be wrong, because the *effect* of a failure to comply with that requirement is, by definition, a question of state law. Different courts make different rules regarding the effect of a basic failure to raise an objection when and where one is required; the contrast between our own waiver/forfeiture distinction and the Illinois approach provides a good example. These rules are always within the province of the court system in which they are to be applied. Under the law of the Supreme Court and of this circuit, a federal court must respect a state court's application of its own rules of basic procedure. *Bute v. Illinois*, 333 U.S. 640, 668 (1948) (referencing the "basic and historic power of the states to prescribe their own local court procedures"); *Coleman v. O'Leary*, 845 F.2d 696, 700 (7th Cir. 1988) (observing that "the question of whether a state court properly applied its state procedural rules is a matter of state law"). Richardson admits his claim was re-

solved on the basis of waiver. It makes little difference what exactly was waived; this sort of basic procedural waiver *is* a resolution on state law grounds.

To reiterate, the Illinois Supreme Court's opinion was not ambiguous. It clearly did not rely on a rule created by *Batson*, given that it cited and relied on Illinois case law both pre-dating and post-dating that decision. Furthermore, Richardson does not argue that the court based its judgment on anything other than waiver, and waiver is an independent state law ground. The remaining question is whether it is an "adequate" ground to presumptively foreclose our review.

### 2. Adequacy of Waiver Finding

A state law ground must be "adequate," in addition to independent, to foreclose federal review. For a procedural default to be considered an adequate state law ground, the rule under which it is invoked must have been firmly established and regularly followed as of the time when the procedural default occurred. *James v. Kentucky*, 466 U.S. 341, 348–49 (1984); *Ford*, 498 U.S. at 423–24; *see also Smith v. McKee*, 598 F.3d 374, 382 (7th Cir. 2010); *Franklin v. Gilmore*, 188 F.3d 877, 882 (7th Cir. 1999). Only then can a petitioner be "deemed to have been apprised of its existence." *NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449, 457 (1958).

Richardson argues that the rule under which he procedurally defaulted was not in place at the time of his trial because *Batson* had not yet been decided. But Richardson did not default an objection to the jury composition because of *Batson*; he defaulted an objection to the jury composition because he did not make one, and because, under Illinois law pre-dating

and post-dating both *Batson* and his trial, that is waiver.[6] As the court explained, "a defendant who failed to object to the prosecution's use of peremptory challenges under the old rule of *Swain* cannot receive on appeal the benefit of the new rule announced in *Batson*." 727 N.E.2d at 368. The cases cited by the Illinois Supreme Court show that the waiver rule concerning objections to jury composition existed at the time of Richardson's trial, *see People v. Gaines*, 430 N.E.2d 1046, 1054 (Ill. 1981) (refusing to consider challenge to racial composition of jury when defendant did not object before jury was sworn), and that it has been regularly followed since. *See, e.g., People v. Pecor*, 606 N.E.2d 1127 (Ill. 1992). Accordingly, the Illinois waiver rule is an adequate state law ground for a judgment.

The Illinois Supreme Court's finding that Richardson waived his *Batson* claim by failing to make a contemporaneous objection to the prosecutor's use of peremptories or to the composition of the jury was an independent and adequate state law ground for the judgment. Richardson procedurally defaulted that claim. The next question is whether we may reach the merits nonetheless.

### 3.  *Cause and Prejudice*

Because the independent and adequate state law ground rule is prudential and not jurisdictional, we may excuse a procedural default if the petitioner can show both cause for

---

[6]  This is not to say that Richardson's argument concerning the non-existence of a *Batson* claim at the time of his trial has no place in this appeal at all. While it is not relevant to determining whether a default occurred in the first place, it does factor into our consideration of whether there is cause to excuse that default.

and prejudice from the default or can demonstrate that the district court's failure to consider the claim would result in a fundamental miscarriage of justice. *Bolton v. Akpore*, 730 F.3d 685, 696 (7th Cir. 2013). Richardson does not argue that a miscarriage of justice has occurred, but he does argue cause and prejudice to excuse the default. We review the cause and prejudice questions *de novo*. *Holmes v. Hardy*, 608 F.3d 963, 967 (7th Cir. 2010).

Cause for a default is ordinarily established by showing that some type of external impediment prevented the petitioner from presenting his claim. *Lewis*, 390 F.3d at 1026. Richardson argues three potential causes to excuse his default: (1) that trial counsel was constitutionally ineffective for failing to object to the prosecution's use of peremptories; (2) that appellate counsel was constitutionally ineffective for failing to raise a *Batson* claim on direct review, when *Batson* had already been decided; and (3) that there was no reasonable basis for a challenge to the prosecution's use of peremptories at the time of trial, relying on the rule of *Reed v. Ross*, 468 U.S. at 17. We address Richardson's arguments sequentially.

### a.  *Performance of Trial Counsel*

Meritorious claims of ineffective assistance can excuse a procedural default. *Brown v. Watters*, 599 F.3d 602, 609 (7th Cir. 2010) (citing *Murray v. Carrier*, 477 U.S. 478, 488–89 (1986)). But those claims must themselves be preserved; in order "to use the independent constitutional claims of ineffective assistance of trial and appellate counsel as cause to excuse a procedural default, [a petitioner is] required to raise the claims through

one full round of state court review, or face procedural default of those claims as well." *Gray*, 598 F.3d at 330.

Richardson never presented his claim of ineffective assistance of trial counsel for one full round of review. He did not present it at all on direct review, and he did not present it to the Illinois Supreme Court on collateral review. On the contrary, he affirmatively abandoned it. 727 N.E.2d at 369. This claim is procedurally defaulted, and Richardson offers no argument to save it. It therefore cannot serve as cause to avoid his default on the *Batson* claim.

### b.   *Performance of Appellate Counsel*

Richardson's second argument for cause is his assertion that appellate counsel was constitutionally ineffective for failing to raise the *Batson* issue on direct appeal. Richardson did independently preserve this claim, arguing it at every level in the state court collateral review process. To establish ineffective assistance sufficient to excuse a procedural default, a petitioner must satisfy the familiar two-part test from *Strickland v. Washington*, 466 U.S. at 687. He must show that counsel's performance was objectively deficient and that the deficient performance prejudiced his case. The Illinois Supreme Court concluded that appellate counsel was not ineffective for failing to argue a waived claim.

In our circuit, when we review a state court's resolution of an ineffective assistance claim in the cause-and-prejudice context, we apply the same deferential standard as we would when reviewing the claim on its own merits. *Gray*, 598 F.3d at 330–31; *Wrinkles v. Buss*, 537 F.3d 804, 813 (7th Cir. 2008). In other words, ineffective assistance only provides cause to

excuse a default if the state court decision with respect that ineffective assistance claim: (1) was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or (2) was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d); *Wrinkles*, 537 F.3d at 813. Other courts review nested ineffective assistance issues *de novo*, or have refrained from deciding which standard of review to apply. *See, e.g., Janosky v. St. Amand*, 594 F.3d 39, 44–45 (1st Cir. 2010) (acknowledging circuit split); *Hall v. Vasbinder*, 563 F.3d 222, 236–37 (6th Cir. 2009) (applying *de novo* standard of review in the cause and prejudice context); *Fischetti v. Johnson*, 384 F.3d 140, 154–55 (3d Cir. 2004) (same); *but see Roberson v. Rudek*, 446 Fed.Appx. 107, 109 (10th Cir. 2011) (implicitly agreeing with our approach by affirming district court's invocation of AEDPA deference).

The standard of review makes no difference here. Richardson did not receive ineffective assistance of appellate counsel. In order for the prejudice prong of the *Strickland* test to be satisfied, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. We know that there is *no* chance the outcome would have been different. If Richardson's appellate attorney had tried to challenge the prosecution's use of peremptories before the Illinois Supreme Court on direct appeal, it would have found that the claim was waived through trial counsel's failure to contemporaneously object—just as it found when faced with the exact same question on collateral review.

Because appellate counsel did not provide constitutionally ineffective assistance, the performance of appellate counsel cannot excuse Richardson's procedural default.

### c.   *Reed v. Ross*

The district court found that there was cause to excuse Richardson's procedural default because no reasonable basis existed for a challenge to the prosecution's use of peremptories at the time of trial, relying on *Reed v. Ross*, 468 U.S. 1. In *Reed*, the Supreme Court first identified three situations in which it might be said to announce a "new" rule:

> First, a decision of this Court may explicitly overrule one of our precedents. Second, a decision may overturn a longstanding and widespread practice to which this Court has not spoken, but which a near-unanimous body of lower court authority has expressly approved. And, finally, a decision may disapprove a practice this Court arguably has sanctioned in prior cases.

468 U.S. at 17 (citations and internal markup omitted). It then explained that when a case falling into one of the first two categories is given retroactive application, "there will almost certainly have been no reasonable basis upon which an attorney previously could have urged a state court to adopt the position that this Court has ultimately adopted." *Id*. Under such circumstances, cause to excuse a procedural default is present.

Even if we assume that *Reed v. Ross* is still valid law,[7] we cannot agree with the district court's invocation of it in the case before us. *Batson* did overrule *Swain v. Alabama*, 380 U.S. 202 (1965), to the extent that the two cases were in conflict. 476 U.S. at 100 n.25. But *Batson* did not invent the rule that a state violates the Equal Protection Clause when a prosecutor uses peremptory challenges to strike jurors on account of their race, nor did it conflict with *Swain* in that regard. Quite to the contrary, it found that rule in *Swain* itself. *See Batson*, 476 U.S. at 91 ("[*Swain*] went on to observe … that a State may not exercise its challenges in contravention of the Equal Protection Clause."). For that matter, *Swain* did not invent the rule, either; it had existed for decades. *See, e.g., Norris v. Alabama*, 294 U.S. 587, 589 (1935) (explaining that the principle that the exclusion of individuals from grand jury service on account of their race is constitutionally problematic applies equally to exclusion from service on petit juries).

That rule—the rule that the use of peremptories to exclude persons from service on the petit jury on account of race violates the Equal Protection Clause—*is* the "legal basis" of Richardson's claim in this case. *Batson* did not overrule *Swain* with regard to that legal basis. It did the opposite; it affirmed it. Richardson therefore cannot argue that the legal basis of his claim was unavailable before *Batson*, and he cannot rely on the rule of *Reed v. Ross*.

---

[7] We have observed that the Supreme Court's later decision in *Teague v. Lane*, 489 U.S. 288 (1989), "leaves no independent role for a doctrine treating legal change as 'cause.'" *Prihoda v. McCaughtry*, 910 F.2d 1379, 1386 (7th Cir. 1990).

To be sure, *Batson* did overrule *Swain* with respect to the evidentiary burden placed on a defendant claiming unconstitutional use of peremptories. *Swain* created a presumption, rooted in the history of peremptory strikes at common law, that the prosecution was using those strikes properly. 380 U.S. at 222. The presumption could only be overcome with evidence that the peremptory strike system was being perverted, which proved to be an exceedingly difficult standard to meet. *See Batson*, 476 U.S. at 91–93. *Batson* changed the quantum of proof necessary to make out a *prima facie* case of discrimination, laying out the now-familiar burden-shifting framework and making it possible to prove discrimination with evidence intrinsic to a single case. But none of that means *Batson* created a new claim that was not available to Richardson at the time of his trial. It simply means *Batson* made his pre-existing constitutional claim substantially less difficult to prove. According to the Supreme Court, that is not cause. *Smith v. Murray*, 477 U.S. 527, 537 (1986) ("the question is not whether subsequent legal developments have made counsel's task easier, but whether at the time of the default the claim was 'available' at all."). Thus, Richardson's default is not excused.

We note, significantly, that our understanding of the *Swain–Batson* transition is based on the words of the Supreme Court itself:

> In *Swain v. Alabama*, the Court held that, although the use of peremptory challenges to strike black jurors on account of race violated the Equal Protection Clause, a defendant could not establish such a violation solely on proof of the prosecutor's action at his own trial. *Batson* overruled *that portion* of *Swain*, changing the *standard for*

*proving* unconstitutional abuse of peremptory chal-
lenges.

*Allen v. Hardy*, 478 U.S. 255, 258–59 (1986) (internal citations
omitted) (emphasis added). In other words, as we have said,
*Batson* did not change the right; it changed the standard of
proof. The dissent reads the transition differently, and not, in
a vacuum, unreasonably. We believe, however, that we are
bound to honor the Supreme Court's interpretation of its own
prior case law.

In that, we are joined by every circuit court to consider this
issue. *See Ruff v. Armontrout*, 77 F.3d 265, 267 (8th Cir. 1996);
*Pitts v. Cook*, 923 F.2d 1568, 1572-73 (11th Cir. 1991); *Williams v.
McCarthy*, 879 F.2d 866 (9th Cir. 1989) (unpublished table
decision); *Jones v. Butler*, 864 F.2d 348, 363-64 (5th Cir. 1988).
Although the rationales provided by our sister circuits differ in
some respects from our own, we have all reached the conclu-
sion that *Batson* did not work a change in existing law suffi-
cient to excuse a failure to object under *Swain*. Without cause
to excuse Richardson's default, we need not ask whether he is
actually prejudiced by it. Our review is foreclosed, and we
reverse the district court's grant of his petition.

### B.  Other Crimes Evidence

Richardson appeals the district court's denial of his claim
concerning the admission of certain other crimes evidence.
Although Richardson was only charged with crimes relating to
the April 1, 1980, armed robbery at Twin Foods & Liquors, the
prosecution also introduced evidence linking him to armed
robberies taking place in the neighborhood on April 5, 1980,
and May 4, 1982. The last state court to consider the issue was

the Illinois Supreme Court on direct review, which found that the April 5, 1980, evidence was "highly relevant and admissible" for the purpose of identifying Richardson as the April 1st shooter, and that, while there was no justifiable basis for the admission of the May 4th evidence, the erroneous admission was harmless.

A habeas corpus petitioner may only obtain relief if he shows that he is in custody "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). That means an erroneous admission under state rules of evidence is no concern of ours unless it is so egregiously prejudicial as to implicate constitutional principles. Accordingly, Richardson couches his claim in due process terms. The district court correctly noted that claims based on the "catch-all sense of due process" almost always fail. 855 F. Supp. 2d at 816 (quoting *Hammer v. Karlen*, 342 F.3d 807, 811 n.3 (7th Cir. 2003)). State court evidentiary rulings only implicate the Due Process Clause when "evidence 'is so extremely unfair that its admission violates fundamental conceptions of justice[.]'" *Perry v. New Hampshire*, 132 S. Ct. 716, 723 (2012) (quoting *Dowling v. United States*, 493 U.S. 342, 352 (1990)). The district court did not believe that lofty standard was met and denied relief. We review *de novo*, *Ebert v. Gaetz*, 610 F.3d 404, 411 (7th Cir. 2010), and we agree.

Even if we assume Richardson properly preserved the constitutional claim,[8] we agree with the district court. Our

---

[8] Richardson did couch the evidentiary claim in constitutional terms before the Illinois Supreme Court by describing it as such in a supplemental

                                                                    (continued...)

consideration of the Illinois Supreme Court's decision is deferential, and we will grant relief only if the state court decision: (1) was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or (2) was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d). The circumstances make it difficult to coherently apply AEDPA deference to the Illinois Supreme Court's decision—it was based entirely on state rules of evidence. But a state court decision that does not cite federal precedent is still consistent with federal law so long as neither the reasoning nor the result of the state court decision contradicts the Supreme Court's decisions. *Early v. Packer*, 537 U.S. 3, 8 (2002).

The Illinois Supreme Court did not contradict any federal principles, let alone any principles established by the United States Supreme Court itself. When engaging in an evidentiary due process analysis, we often simplify the inquiry by asking whether the probative value of the evidence is greatly out-weighed by the prejudice to the accused. *United States ex rel. Palmer v. DeRobertis*, 738 F.2d 168, 171 (7th Cir. 1984) (citing *United States v. Pate*, 426 F.2d 1083, 1086 (7th Cir. 1970)). In this case it is not.

First, we agree with the Illinois Supreme Court that the April 5, 1980, evidence was extremely probative of Richard-

---

[8] (...continued)

memorandum, but it is not clear whether he initially argued it as such at the trial level or whether a failure to do so under these circumstances would defeat the complete round requirement.

son's guilt. It gave the prosecution the ability to use ballistics evidence to tie additional eyewitness identification testimony to Richardson as the perpetrator of both offenses. In a case where physical evidence was hard to come by, the probative value of that link cannot be overstated. To whatever extent it was also prejudicial to Richardson's case (probative evidence always is—that's the point), that prejudice does not greatly outweigh the probative value.

Second, we further agree that the May 4, 1982, evidence was not particularly prejudicial. The testimony was brief and came with a limiting instruction. *See Soltys v. Costello*, 520 F.3d 737, 744 (7th Cir. 2008) ("We presume that juries follow the instructions given them by the court."); *3M v. Pribyl*, 259 F.3d 587, 600 (7th Cir. 2001). There is no reason to believe that it influenced the jury so heavily and so improperly as to violate fundamental conceptions of justice. *Perry*, 132 S. Ct. at 723 .

Finally, we note that we reached these conclusions by evaluating the effect of this evidence within the context of the trial in which it was admitted—the same trial in which the defendant's purportedly exculpatory witness was not permitted to testify. There is no need to separately consider the cumulative effect of that issue. We affirm the district court's treatment of Richardson's due process claim.

*C. Ineffective Assistance of Counsel at Sentencing*

Richardson appeals the district court's denial of his claim that he received ineffective assistance of counsel during the sentencing phase. During the sentencing phase, the State of Illinois introduced evidence of years' worth of violent criminal activity and delinquency under supervision. Richardson's

strategy in mitigation was to continue to protest his innocence, and his attorney also called his mother and the mother of his children to the stand to testify in support of his character. Defense counsel did not, however, introduce any evidence of Richardson's allegedly troubled childhood or his below-average intelligence. On collateral review, Richardson's attacked his attorney's performance.

The Illinois Supreme Court applied the *Strickland* standard and found that Richardson failed both prongs of the test. With respect to performance, the court found that trial counsel's decision not to pursue or investigate any evidence justifying or excusing Richardson's conduct was reasonable in light of the fact that Richardson intended to testify as to his own innocence; it might undermine Richardson's credibility to juxtapose his "I did not do it" testimony with a full batch of "this is why he did it" evidence. With respect to prejudice, the court reviewed Richardson's vast and violent criminal history, offered by the State in aggravation, and concluded that any evidence of childhood, social, or mental difficulty would not have swayed the trial court away from a sentence of death. The district court, applying the deferential AEDPA standard, denied Richardson's request for relief. We review *de novo*.

Putting aside the performance prong of the *Strickland* test, we affirm the denial of Richardson's claim because a reasonable jurist could certainly conclude, as did the Illinois Supreme Court, that the introduction of the evidence Richardson sought would not have changed the sentence handed down by the

trial court.[9] *Strickland*, 466 U.S. at 694; *Griffin v. Pierce*, 622 F.3d 831, 844 (7th Cir. 2010) ("When challenging his sentence, a petitioner must show that but for counsel's errors, there is a reasonable probability that he would have received a different sentence."). When engaging in the probability inquiry, a court should "consider 'the totality of the available mitigation evidence—both that adduced at trial, and the evidence adduced in the [later] proceeding'—and 'reweig[h] it against the evidence in aggravation.'" *Porter v. McCollum*, 558 U.S. 30, 41 (2009) (quoting *Williams v. Taylor*, 529 U.S. 362, 397–98 (2000)). The Illinois Supreme Court did. It concluded that a trial court that sentenced Richardson to death based on the fact that he was a convicted murderer and a proven recidivist with a violent criminal past would not be appreciably less likely to sentence him to death if it was also made aware that he was mentally troubled. Not every jurist will agree with that conclusion, but it was certainly not an unreasonable one. We affirm the district court's treatment of this claim.

### III. CONCLUSION

For the reasons stated above, we AFFIRM in part and REVERSE in part. We reverse the district court's grant of habeas relief based on Richardson's defaulted challenge to the prosecution's use of peremptories; he has not shown cause to excuse his failure to contemporaneously object. We affirm the district court's denial of Richardson's petition on eviden-tiary/due process and ineffective assistance grounds. The

---

[9] Ultimately, due to the commuting of his sentence, Richardson would not be entitled to relief unless the trial court would have handed down a sentence to a term of years.

summary effect is that Richardson's petition for a writ of habeas corpus is denied in full.

WOOD, *Chief Judge,* dissenting. The Illinois Supreme Court held that Floyd Richardson cannot benefit from the Supreme Court's decision in *Batson v. Kentucky*, 476 U.S. 79 (1986) because, while *Batson* was decided only while his case was on direct appeal, Richardson failed to show cause for his failure contemporaneously to object to the prosecution's use at trial of peremptory challenges. The state court reached that result by concluding that because Richardson's trial counsel did not (futilely) object to the composition of the jury under *Swain v. Alabama*, 380 U.S. 202 (1965), any argument under *Batson* was waived. It reasoned that appellate counsel's performance could not be deemed inadequate under *Strickland v. Washington,* 466 U.S. 668 (1984), it continued, because any effort by appellate counsel to raise the *Batson* claim would have been doomed because of this supposed waiver. Richardson challenged this outcome in a petition for a writ of *habeas corpus,* which the district court granted. The majority today reverses that judgment, on the ground that Richardson defaulted on his challenge to the prosecution's use of peremptories and has not demonstrated the necessary cause and prejudice to overcome that default and thus to prevail on his claim of ineffective appellate counsel. I respectfully dissent.

## I

I have nothing to add to the majority's summary of the underlying facts and procedural posture of the case. Indeed, I agree with them on two points: Richardson failed to preserve any argument he might have about the effectiveness of *trial* counsel's performance, and he procedurally defaulted his *Batson* argument because the Illinois Supreme Court's

waiver finding was an adequate and independent state ground supporting its decision. Where I part company is on the question whether he has shown the cause and prejudice that is needed to overcome his procedural default. Because *Batson* fundamentally enlarged the application of the Equal Protection Clause to the racially discriminatory use of peremptory challenges in even a single case, and in so doing overturned a critical portion of *Swain*, I would affirm the district court. In order to reach this conclusion, I must consider both the effectiveness of appellate counsel and the intertwined question whether the Illinois court's rule barring *Batson* challenges if a *Swain* challenge was forfeited is consistent with the jurisprudence of the United States Supreme Court.

## II

At the heart of all this is the question whether *Batson* announced a new rule under the Equal Protection Clause, as it applies to the use of peremptory challenges. See *Reed v. Ross*, 468 U.S. 1 (1984). As the Supreme Court noted in *Whorton v. Bockting*, 549 U.S. 406 (2007), "[u]nder the *Teague* [*v. Lane*, 489 U.S. 288 (1989)] framework, an old rule applies both on direct and collateral review, but a new rule is generally applicable only to cases that are still on direct review." 549 U.S. at 416. If, or to the extent that, *Batson* announced a new rule, then Richardson's appellate counsel performed deficiently by failing to raise the issue on direct review. Moreover, precisely because the rule is new, Richardson cannot be said to have waived the point because he did not raise it at trial.

My colleagues concede, *ante* at 28, that *Batson* overruled *Swain*, but they interpret the Supreme Court's statement that

it did so with respect to the "standard for proving unconsti-
tutional abuse of peremptory challenges" differently from
the way I do. See *ante* at 28–29. Indeed, as I explain, I believe
that their interpretation fails to reflect the Supreme Court's
own discussion in *Batson.* When the *Batson* Court changed
"the quantum of proof necessary to make out a *prima facie*
case of discrimination," *ante* at 28, it rejected "the eviden-
tiary formulation" that a number of lower courts had used
after *Swain,* under which those courts thought that "proof of
repeated striking of blacks over a number of cases was nec-
essary to establish a violation of the Equal Protection
Clause." 476 U.S. at 92–93. The Court then set forth "[t]he
showing necessary to establish a prima facie case of pur-
poseful discrimination in selection of the venire." *Id.* at 94. In
so doing, the Court said, "the defendant may establish a
prima facie case 'in other ways than by evidence of long-
continued unexplained absence' of members of his race
'from many panels.'" *Id.* at 95 (*Cassell v. Texas,* 339 U.S. 282,
290 (1950) (plurality opinion)). Specifically, "since the deci-
sion in *Swain,* this Court has recognized that a defendant
may make a prima facie showing of purposeful racial dis-
crimination in selection of the venire by relying solely on the
facts concerning its selection *in his* case." *Id.* The Court un-
derscored the point only a few lines later, stating that the
principles articulated since *Swain* "support our conclusion
that the defendant may establish a prima facie case of pur-
poseful discrimination in selection of the petit jury *solely on
evidence concerning the prosecutor's exercise of peremptory chal-
lenges at the defendant's trial." Id.* at 96 (emphasis added).

As the Court recognized, *Swain* said in no uncertain terms that the "standard" for proving an equal protection violation was *not* met if the defendant showed only that a prosecutor used peremptory challenges in the defendant's own case in a racially discriminatory way. *Batson* agreed that system-wide discrimination (as called for by *Swain*) would be *one* way in which a violation could be proven, but it added another path that also would satisfy the standard of proof: proof of discriminatory use of peremptories "at the defendant's trial." Whatever label one puts on this—a difference in "standard of proof," as the Court called it, or a broader conception of the underlying substantive right, as it can also be characterized—it is plain that the part of *Swain* that the Court disapproved in *Batson* was the earlier case's rejection of a standard that insisted on a showing of continuous and systematic discrimination and found inadequate a showing only of discrimination in the defendant's own trial. The Court itself recognized that it was announcing a new rule to this extent, albeit one that it later decided should apply only on direct appeals, not on collateral review. This point is reinforced by a closer look at the two cases.

In *Swain*, petitioner Swain, a black man, was indicted and convicted of rape in an Alabama state court; he was sentenced to death. Swain raised three separate challenges to the jury selection process: the first concerned the process by which venire persons were selected; the second focused on the prosecutor's use of preemptory challenges to remove the six remaining black persons from the jury that tried him; and the third attacked the systematic use of peremptory challenges by Talladega County prosecutors to remove black ve-

nire persons in all cases. Swain supported the latter point with evidence that literally no black persons had served on a petit jury in the county since around 1950, even though black males constituted 26% of those who could serve. At trial, the court denied his motions to strike the trial jury venire and to declare void the petit jury that was chosen. These motions were based on the ground that the selection of the trial jury resulted from invidious race-based discrimination in violation of the Equal Protection Clause. The Alabama Supreme Court affirmed his conviction, and the case then moved to the United States Supreme Court.

Focusing on the Supreme Court's analysis of Swain's second claim (that the use of preemptory challenges to remove all remaining black persons from the jury that tried him was racially motivated in violation of the Fourteenth Amendment), we see that the Court did not reject the claim because of inadequate evidence. Instead, the Court thought that even if the allegations were true, petitioner failed to state a claim cognizable under the Fourteenth Amendment. The Court's reasoning is worth setting out in some detail, because this is the precise part of *Swain* that *Batson* was to overrule 21 years later. It is also the precise reasoning that I believe the majority has overlooked. Here is what the Court said:

> The essential nature of the peremptory challenge is that it is one exercised without a reason stated, without inquiry and without being subject to the court's control. While challenges for cause permit rejection of jurors on a narrowly specified, provable and legally cognizable basis of partiality, the peremptory permits

rejection for a real or imagined partiality that is less easily designated or demonstrable. It is often exercised upon the 'sudden impressions and unaccountable prejudices we are apt to conceive upon the bare looks and gestures of another,' upon a juror's 'habits and associations,' or upon the feeling that 'the bare questioning (a juror's) indifference may sometimes provoke a resentment.' It is no less frequently exercised on grounds normally thought irrelevant to legal proceedings or official action, namely, *the race*, religion, nationality, occupation or affiliations of people summoned for jury duty. For the question a prosecutor or defense counsel must decide is not whether a juror of a particular race or nationality is in fact partial, but whether one *from a different group* is less likely to be. … Hence veniremen are not always judged solely as individuals for the purpose of exercising peremptory challenges. Rather they are challenged in light of the limited knowledge counsel has of them, *which may include their group affiliations*, in the context of the case to be tried.

*Id.* at 220–21 (emphases added) (internal citations omitted).

The sentence that follows this passage is unambiguous and underscores the distinction between *Swain* and *Batson*: "With these considerations in mind, *we cannot hold that striking of Negroes in a particular case is a denial of equal protection of the*

*laws*." *Id*. at 221 (emphasis added). The Court thus held that the motion to strike the trial jury was properly denied.

The Court in *Swain* embraced a rule under which the Equal Protection Clause does *not* reach discrimination in the use of peremptory challenges at the retail level—that is, in the selection of the defendant's own jury. That holding has nothing to do with the order of proof; it delineates what will, and will not, violate the Constitution. Under *Swain*, the Equal Protection Clause is violated only where prosecutors "consistently and systematically exercised their strikes to prevent any and all Negroes on petit jury venires from serving on the petit jury itself." *Id.* at 223. This would have to go on "in case after case, whatever the circumstances, whatever the crime and whoever the defendant or the victim may be." *Id.* The *Swain* Court did not pursue that point further, because it found that it was "readily apparent that the record in this case [was] not sufficient to demonstrate that the rule has been violated by the peremptory system as it operates in Talledega County." *Id.* at 224.

*Batson* overruled and fundamentally transformed this portion of *Swain*. Instead of recognizing an equal protection violation only if "case after case, whatever the circumstances" the peremptory system was being used in a racially discriminatory way, *Batson* held that "a defendant may make a prima facie showing of purposeful racial discrimination in selection of the venire by relying solely on the facts concerning its selection *in his case*." 476 U.S. at 95.

It is true that *Batson* went on to outline how a defendant should go about presenting proof of purposeful discrimina-

tion in the use of peremptories. But the crucial question—what must the proof demonstrate—changed between *Swain* and *Batson*. A substantive claim—discrimination in the selection of the defendant's own jury—went from being outside to being within the reach of the Equal Protection Clause.

Suppose, in a particular case that arose in 1980 (that is, after *Swain* but before *Batson*), a criminal defendant (or more realistically his lawyer) realized that it would not be possible in his area to demonstrate consistent and systematic discrimination in the use of peremptory challenges, yet he believed that he could demonstrate purposeful racial discrimination in the selection of the jury in his particular case. Such a lawyer, knowing that *Swain* dictated the applicable law, would be forced to conclude that it would be frivolous to raise an equal protection claim. If he tried to do so, he would be met with the statement in *Swain* that the Court "cannot hold that striking of Negroes in a particular case is a denial of equal protection of the laws." 380 U.S. at 221. The prosecutor would be quick to point out that the *Swain* Court did not recognize a claim based on "allegations that in the case at hand all Negroes were removed from the jury *or that they were removed because they were Negroes*." *Id*. at 222 (emphasis added).

Now suppose that the same case arose in 1990, after *Batson*. Defense counsel operating with the benefit of the *Batson* rule would know that her client had a cognizable claim, because for the first time it would be permissible to rely "solely on the facts concerning [jury] selection *in his case*." 476 U.S. at 95. That is not an evidentiary difference; it is a substantive one.

The Supreme Court's decisions reinforce this point. In direct contrast to *Swain*, *Batson* and the cases that follow it find that the racially discriminatory use of even one peremptory challenge in a single case violates the Equal Protection Clause. See, *e.g.*, *Snyder v. Louisiana*, 552 U.S. 472 (2008) (conviction overturned on *habeas corpus* petition because of single discriminatory peremptory challenge); *Miller-El v. Dretke*, 545 U.S. 231, 239 (2005) (*Batson* expanded *Swain* by holding that a defendant could support a *prima facie* case by relying only on the totality of the facts in his own trial).

Other areas of Fourteenth Amendment jurisprudence illustrate the distinction between evidentiary methodology and criteria to state a claim. In *Parratt v. Taylor*, 451 U.S. 527 (1981), for instance, a state prison inmate's mail-order hobby materials were lost when prison officials failed to follow the normal procedures for mailed packages. The inmate sued the officials under section 1983. The Supreme Court held that while the inmate had been deprived of property under color of state law, he nonetheless did not state a claim for relief because the alleged deprivation did not trigger the protections of the Due Process Clause. This was because the deprivation did not occur as a result of an established state procedure. *Id.* at 543. *Parratt* emphasized that state law provides procedures for accidental deprivations of property, and this was enough to satisfy due process. More generally, it stands for the proposition that not all property deprivations inflicted by state officials acting under color of law violate the Fourteenth Amendment—only those that also occur without due process. Similarly, under *Swain*, the rule was that not all racial discrimination in the use of peremptory

challenges violates the Fourteenth Amendment. The Constitution, it held, is violated only if that discrimination was system-wide and longstanding (and for the *Swain* Court, not even fifteen years with *zero* African-Americans on a jury in Talladega County satisfied that element).

*Monell* brings out a similar point. *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658 (1978). There, the Supreme Court held that local governments can be held liable for constitutional deprivations only when the complaint is about governmental custom, practice, or policy; there is no *respondeat superior* liability under § 1983. *Id.* at 691–92. The fact that a plaintiff cannot succeed on a *Monell* claim for a deprivation that does not arise out of a policy or custom is not an evidentiary bar; it is a substantive restriction on the claim. Similarly, under *Swain*, a plaintiff could not succeed on an equal protection claim limited to discrimination in his own jury. This was not because of anything about the burdens of production or proof; it was because the Court saw peremptory challenges as an essential and traditional part of a criminal trial, and it believed that a constitutional violation arose only if pervasive misuse could be proven.

Proving one instance and proving a continuous and systematic pattern are two different things. *Batson* changed the law, but the Illinois courts did not acknowledge that fact, and today the majority perpetuates that error. This is an error that meets the demanding standards for federal *habeas corpus* relief. The Illinois court's decision that counsel waived a *Batson* argument by failing to raise a *Swain* argument amounts to a decision that is contrary to the law as announced by the Supreme Court of the United States. At the

very least, it is an unreasonable application of that law. Since that is the case, it was also error for the state court to conclude that appellate counsel's performance was constitutionally adequate in the face of his failure to take advantage of the Supreme Court's intervening *Batson* decision while Richardson's direct appeal was under consideration in the Illinois courts. (I stress again that this case does not present any problem about retroactive application of *Batson* to cases that have become final in the state system, because Richardson's case had not reached that point. My position is entirely consistent with the Supreme Court's decision in *Allen v. Hardy*, 478 U.S. 255 (1986), which held that *Batson* does not apply retroactively to cases on *collateral* review.)

As the Supreme Court reaffirmed in *Hinton v. Alabama*, No. 13-6440 (decided Feb. 24, 2014), "counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." Sl. op. at 11, quoting from *Strickland*, 466 U.S. at 690–91. Counsel in *Hinton* "failed to make even the cursory investigation of the state statute" in question. Sl. op. at 11. The Court concluded that "[a]n attorney's ignorance of a point of law that is fundamental to his case combined with his failure to perform basic research on that point is a quintessential example of unreasonable performance under *Strickland*." *Id.* As the record in our case shows, that is exactly the kind of performance Richardson's appellate counsel rendered. It appears that he was unaware of the Supreme Court's decision in *Batson*, and thus he made no effort to argue to the Illinois courts that the jury selection process *in Richardson's own case* was tainted by racial discrimination. After *Batson*, counsel had no

duty to shoulder the additional burden of showing that the process in Illinois, or in Cook County, was systematically and consistently flawed.

As the able district judge did, I would find that Richardson received constitutionally ineffective assistance of counsel with respect to his *Batson* argument, and I would grant the writ on that basis. In *Allen v. Hardy*, the Supreme Court waxed eloquent about how prosecutors and judges had "compelling" reliance interests on *Swain*; that is why it held that *Batson* would not apply retroactively to convictions that became final before *Batson* was announced. 478 U.S. at 260. I note as well that there is something seriously out of kilter about the notion that the reliance of prosecutors on *Swain* was "compelling," but that the reliance of defense counsel on *Swain* is of no moment. If defense counsel should have anticipated *Batson*, then it seems only fair to think that prosecutors should have done so, too. In fact, as *Allen* recognized, *Batson* was a break with the past, but a break that would apply only to cases on direct review, not to cases on collateral review. That is what should have happened here.

### III

Richardson has also presented other arguments in support of the district court's judgment, but like my colleagues, I reject them. Although I consider his arguments about counsel's performance at sentencing to be close, I am persuaded that the deferential standard dictated by 28 U.S.C. § 2254(d) requires us to deny relief on that ground. I also find no reversible error in the district court's decision that his arguments based on the admission of the "other crimes" evi-

dence do not meet the standard for granting the writ. I would therefore affirm the district court's judgment across the board, and thus I respectfully dissent.